ANNA M. HILL, Respondent, v METROPOLITAN SUBURBAN BUS AUTHORITY, Appellant, PENBROOK MANAGEMENT CORP. et al., Respondents, and COUNTY OF NASSAU et al., Defendants and Third-Party Plaintiffs-Respondents. BANCKER CONSTRUCTION CORP., Third-Party Defendant-Respondent.

Second Department, May 7, 1990

94

APPEARANCES OF COUNSEL

*Curtis, Zaklukiewicz, Vasile, Devine & McElhenny (Eugene Patrick Devany* of counsel), for appellant.

*White, Fleischner & Fino (Marcia J. Lynn* of counsel), for Penbrook Management Corp. and another, respondents.

**OPINION OF THE COURT**

KOOPER, J.

█ The question to be resolved on appeal is whether a "covered person" entitled to immunity from direct suit pursuant to New York's "No-Fault" Insurance Law (Insurance Law § 5101 *et seq.),* may nevertheless be subject to a claim for contribution interposed by noncovered codefendants. For the

reasons that follow, we answer the foregoing question in the affirmative, and modify the order appealed from accordingly.

## I.

The pertinent facts are that on October 31, 1984, at approximately 9:15 A.M., the plaintiff exited a bus operated by the appellant in the Roosevelt Field Shopping Center, located in Garden City, New York. As the plaintiff descended the stairs of the rear exit, the bus door allegedly "caught [her] on the arm". At this point, the plaintiff allegedly tripped on a "nail" or "tile" on the bus staircase, lost her footing, and fell to the sidewalk. According to the plaintiff, there was a hole in the sidewalk directly below the bus exit, into which she fell. She allegedly sustained personal injuries as a result of the fall, and was unable to return to work for a period of two weeks.

Thereafter, the plaintiff commenced suit against the appellant, the County of Nassau, and various other corporate defendants. Significantly, in their joint answer, the defendants Penbrook Management Corp., and Corporate Property Investors, Inc., which were allegedly responsible for maintaining the sidewalk area in question, asserted a cross claim seeking indemnification and/or contribution against, inter alia, the appellant.

By notice of motion dated December 11, 1987, the appellant moved for summary judgment dismissing the complaint and all cross claims interposed against it. In support of its motion, the appellant argued that the plaintiff had failed to establish that she had sustained the requisite "serious injury" within the meaning of New York's No-Fault Insurance Law (see, Insurance Law § 5102 [d]; § 5104 [a]; Licari v Elliott, 57 NY2d 230). Specifically, counsel for the appellant argued, inter alia, that: (1) the plaintiff's bill of particulars alleged "the usual litany of soft tissue injuries", which were not "serious" in nature; (2) the plaintiff conceded in her deposition that she had missed only two weeks of work due to her alleged injuries; and (3) the medical report submitted by the plaintiff failed to set forth the existence of injuries qualifying as "serious" pursuant to Insurance Law § 5102 (d).

In response to the foregoing, the defendants Penbrook Management Corp. and Corporate Property Investors Inc., cross-moved for summary judgment dismissing the complaint. In support of the cross motion, counsel argued that the plaintiff's injuries were solely attributable to the negligent maintenance

and operation of the bus from which she alighted. Although counsel concurred in the appellant's assertion that the plaintiff's injuries were not "serious" within the meaning of the No-Fault Insurance Law (see, Insurance Law § 5102 [d]), counsel argued that the application of the no-fault statute should "not relieve [the appellant] of [its] obligations as a joint tortfeasor for contribution" under the cross claim of the codefendants Penbrook Management Corp. and Corporate Property Investors Inc. Counsel further argued that, "even if the plaintiff's injuries fail to meet the no-fault threshold thereby precluding her from recovery against [the appellant], the co-defendants can not be denied their right to recover from [the appellant] for any culpable conduct on [its] part which contributed to the plaintiff's injury".

In opposition to the defendants' motions, the plaintiff's counsel filed an affirmation in which he argued that summary judgment was inappropriate, since the plaintiff's deposition testimony indicated that *both* the operation of the bus and the sidewalk condition were contributing causes of the plaintiff's injuries. The plaintiff's counsel did not, however, oppose the appellant's contention that both the plaintiff and the appellant were "covered persons" under the No-Fault Law. Nor did he contest the appellant's assertion that the plaintiff's injuries were not "serious". Rather, counsel argued that because there was evidence tending to suggest that the sidewalk condition contributed to the plaintiff's injury, "the plaintiff need not demonstrate a serious injury pursuant to Sec. 5102 of the Insurance Law in order to maintain this action".

## II.

The Supreme Court, Nassau County, denied the motion and cross motion for summary judgment. In so doing, the court observed, insofar as pertinent, that there was conflicting testimony with respect to the precise cause of the accident. The court stated that, "the injuries complained of may have come about as a result of the active negligence of the defendants with respect to the alleged defective condition of the sidewalk". The court further determined that, "[i]n such event plaintiff would *not* be required to demonstrate a serious injury pursuant to Insurance Law 5102 in order to maintain this action". In light of the foregoing, the court did not reach the question of whether the injury sustained was in fact "serious" and, therefore, rendered no decision with respect to whether

the appellant was entitled to dismissal of the cross claims interposed against it.

The appellant now appeals, arguing that: (1) the plaintiff's action, insofar as it is concerned, is one between "covered persons" arising out of the use of a bus within the meaning of the No-Fault Law; (2) the Supreme Court, therefore, erred in declining to reach the question of whether the plaintiff sustained a "serious" injury pursuant to Insurance Law § 5102 (d); (3) the plaintiff offered no proof that she sustained a "serious" injury, thereby necessitating dismissal of her lawsuit; and (4) the policy underlying the No-Fault Law similarly requires dismissal of any cross claims for contribution interposed by the noncovered codefendants.

## III.

■ We note preliminarily our agreement with the appellant's assertion that it is an entity to which the provisions of the No-Fault Law apply. The record reveals, and the plaintiff does not dispute, that the accident, as she alleges it to have occurred, arose from "the use or operation" of the bus, thereby implicating the applicability of the No-Fault Law (see, Insurance Law § 5102 [j], [k]; § 5103 [a] [1]; § 5104 [a]; 11 NYCRR 65.11 [j] [3]; *Dermatossian v New York City Tr. Auth.,* 67 NY2d 219, 223; *cf., Matter of Manhattan & Bronx Surface Tr. Operating Auth. [Gholson],* 71 AD2d 1004; *Blye v Manhattan & Bronx Surface Tr. Operating Auth.,* 124 AD2d 106; *see also, Kramer v Lagnese,* 144 AD2d 648, 649). Nor did the plaintiff oppose the appellant's assertion that the injury she sustained was not "serious" within the meaning of Insurance Law § 5102 (d).[1] In light of the foregoing, and in the absence of evidence in the record otherwise establishing a question of fact as to the existence of a "serious injury", the appellant was entitled to summary judgment dismissing the plaintiff's complaint insofar as it was concerned (see, *Lopez v Senatore,*

---

1. Insurance Law § 5102 (d) defines "serious injury" as, "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

65 NY2d 1017, 1020; *Scheer v Koubek,* 70 NY2d 678, 679; *LaGreca v Ebeling,* 156 AD2d 337; *Colvin v Maille,* 127 AD2d 926). We reject, however, the appellant's further contention that the policy underlying the No-Fault Law mandates dismissal of all cross claims interposed against it by the noncovered co-defendants.

## IV.

Contrary to the appellant's assertions, we find in the no-fault scheme nothing which would require a departure from New York's strongly held preference favoring the availability of contribution among tort-feasors. Nor do we discern underlying policy considerations necessitating that the two independently crafted statutes be "integrated" in such a way as to limit the intended scope and application of either remedial principle *(cf., Ryder Truck Lines v Maiorano,* 44 NY2d 364, 372).

Stated succinctly, "No-fault laws were created to remedy a long recognized and serious problem—the inability of the tort system to rapidly, adequately and fairly compensate victims of automobile accidents" *(see, Goodkin v United States,* 773 F2d 19, 21; *Montgomery v Daniels,* 38 NY2d 41; 12A Couch, Insurance 2d § 45:661, at 245 [2d ed 1981]). The framers of New York's No-Fault Law sought to alleviate these difficulties, *inter alia,* by removing less serious claims from the courts, obviating the need to establish fault as a prerequisite to the recovery of certain losses, and requiring the payment of first-party benefits to claimants immediately upon accrual of the loss in question *(see, e.g.,* Insurance Law §§ 5102, 5104 [a]; *Montgomery v Daniels, supra; see also, Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169, 175-176; *Dermatossian v New York City Tr. Auth.,* 67 NY2d 219, 228, *supra; Licari v Elliott,* 57 NY2d 230, *supra; Perkins v Merchants Mut. Ins. Co.,* 41 NY2d 394, 396; *Goodkin v United States, supra; Palmer v Allstate Ins. Co.,* 101 AD2d 127, 133; Governor's mem in support of L 1973, ch 13, §§ 670-677, 1973 NY Legis Ann, at 298). In short, "the No-Fault Law * * * creates new and independent statutory rights and obligations in order to provide a more efficient means for adjusting financial responsibilities arising out of automobile accidents" *(Aetna Life & Cas. Co. v Nelson, supra,* at 175).

On the other hand, the doctrine of contribution principally affects defendants *(see, Klinger v Dudley,* 41 NY2d 362, 367;

*Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co.,* 45 NY2d 551, 557), and was adopted in order to ameliorate the rigidity of prior law by authorizing the equitable apportionment of liability according to a tort-feasor's relative degree of fault *(see, Board of Educ. v Sargent, Webster, Crenshaw & Folley,* 71 NY2d 21, 26-27; CPLR 1402; *Ravo v Rogatnick,* 70 NY2d 305; *Garrett v Holiday Inns,* 58 NY2d 253, 359; *D'Ambrosio v City of New York,* 55 NY2d 454, 462; *Klinger v Dudley, supra; Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co., supra; Dole v Dow Chem. Co.,* 30 NY2d 143; 23 NY Jur 2d, Contribution, Indemnity and Subrogation, §§ 14, 92-93). Significantly, "[p]rinciples allowing apportionment among tort-feasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault" *(see, Garrett v Holiday Inns, supra,* at 258).

As the foregoing suggests, the two statutory schemes are neither inconsistent in their remedial objectives nor conflicting in practical application *(cf., Ryder Truck Lines v Maiorano,* 44 NY2d 364, *supra).* While the No-Fault Law was intended to address the perceived inability of the tort system to expeditiously and fairly compensate injured claimants, the unrelated principle of contribution seeks to achieve equity in permitting the relative assessment of fault among tort-feasors. Indeed, the rights conferred by the respective statutes "arise at different times and are completely separate—whatever the outcome on the cross-claim [for contribution], it cannot by law affect the amount of recovery to which plaintiffs are entitled"[2] *(see, Goodkin v United States,* 773 F2d 19, 23, *supra;* CPLR 1404 [a]; *Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co., supra; see also, Bay Ridge Air Rights v State of New York,* 44 NY2d 49; *Ryder Truck Lines v Maiorano, supra; Klinger v Dudley, supra,* at 369; 23 NY Jur 2d, Contribution, Indemnity and Subrogation, § 83). Further, authorizing contribution under the infrequently occurring circumstances presented at bar

2. It should be noted that the appellant, a self-insurer, possesses a statutory lien against any recovery obtained by the plaintiff from the noncovered codefendants to the extent of its payment of first-party benefits to the plaintiff (Insurance Law § 5104 [b]; *see also, Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169, 174-175; *Safeco Ins. Co. v Jamaica Water Supply Co.,* 83 AD2d 427, 430, *affd* 57 NY2d 994; *Fowler v Pebble Hill Bldg. Corp.,* 120 AD2d 486, 487; *State-Wide Ins. Co. v Buffalo Ins. Co.,* 105 AD2d 315, 320-321; *Aetna Cas. & Sur. Co. v Jackowe,* 96 AD2d 37, 43-45; *Matter of Celona v Royal Globe Ins. Co.,* 85 AD2d 635, 636; 70 NY Jur 2d, Insurance, §§ 1583-1585).

will not foster litigation which the No-Fault scheme was designed to discourage or "place * * * an inordinate strain on the State's court systems and judicial resources" *(Montgomery v Daniels, supra,* at 51; *Licari v Elliott, supra,* at 236; *Goodkin v United States, supra,* at 24).

## V.

■ Moreover, the existence of a defense precluding the continuation of the plaintiff's direct suit against the appellant does not constitute a bar to the codefendants' assertion of a claim for contribution. We note in this respect that, "New York law embodies a marked preference for contribution and a decided disinclination to limit a defendant's right to recover contribution from a joint tortfeasor" *(see, Goodkin v United States, supra,* at 23). Indeed, the Court of Appeals has repeatedly declined to limit the availability of contribution merely because the party from whom contribution is sought may not be amenable to direct suit by virtue, *inter alia,* of "some special defense barring recovery" *(see, Garrett v Holiday Inns,* 58 NY2d 253, 259, *supra; Klinger v Dudley, supra; Dole v Dow Chem. Co.,* 30 NY2d 143, *supra; see also, Scaccia v Wallin,* 121 AD2d 709; *Woolworth Co. v Southbridge Towers,* 101 AD2d 434, 439; *cf., Goodkin v United States, supra; Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co.,* 45 NY2d 551, 557-558, *supra).* The foregoing holdings rest, in part, upon the principle that the rights asserted by the plaintiff and the "nexus of duty between wrongdoers" derive from analytically distinct legal obligations and, therefore, "may exist independently" of each other *(Garrett v Holiday Inns, supra,* at 259; *see also, Dole v Dow Chem. Co., supra,* at 152, quoting from *Westchester Light. Co. v Westchester County Small Estates Corp.,* 278 NY 175, 179; *Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co., supra,* at 557-558). As the codefendants have aptly observed, the No-Fault Law is no more extensive in its effect upon contribution rights than any other statute or defense which precludes recovery by a plaintiff from a particular wrongdoer *(see, Dole v Dow Chem. Co., supra; Scaccia v Wallin, supra).* Accordingly, the appellant may properly be subject to a claim for contribution in the event the codefendants incur liability to the plaintiff for injuries contributed to, or caused by, the appellant's culpability *(see,* 4 Long, Liability Insurance § 28.20 [1], at 28-173 [1988 ed]).

Finally, it is significant that the provisions of the No-Fault

Law nowhere reveal an intent to relieve an alleged wrongdoer of liability to others not covered by its provisions *(see, Goodkin v United States, supra,* at 23). In light of the foregoing, and considering the strict application generally accorded statutes in derogation of common-law principles *(see, Montgomery v Daniels, supra,* at 46; *Katzman v Derouin,* 109 AD2d 1086; *Cooper v United States,* 635 F Supp 1169, 1173; *cf., Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169, 175, *supra)* any construction of the "no-fault" scheme which would displace the "important policy" of relatively assessed fault among tort-feasors is unwarranted *(see, Garrett v Holiday Inns, supra,* at 258-259). Accordingly, the order is modified, on the law, by deleting the provision thereof which denied that branch of the appellant's motion which was for summary judgment dismissing the plaintiff's complaint insofar as it is asserted against it and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

BROWN, J. P., LAWRENCE and BALLETTA, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof which denied that branch of the appellant's motion which was for summary judgment dismissing the plaintiff's complaint insofar as it is asserted against it and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.