IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0069

════════════

 

Texas Farm Bureau Mutual
Insurance Company, Petitioner,

 

v.

 

Jeff A. Sturrock, Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Ninth District of
Texas

════════════════════════════════════════════════════

 

 

Argued
on April 16, 2003

 

 

Justice Owen,
joined by Justice Hecht, Justice Wainwright, and Justice Brister, dissenting.

 

The average person would not think that tripping
over the threshold of a pickup truck=s
door while exiting is a Amotor
vehicle accident.@  Because the Court does not give these words
their commonly understood meaning, I respectfully dissent.

I

This case was submitted to the trial court on
stipulated facts.  Sturrock
had been driving his truck.  He stopped
the vehicle, parked, and turned off the ignition.  The parties=
agreed statement of facts says, ASturrock then turned and opened the door, and as he was
exiting the vehicle, his left foot somehow became entangled, and he almost
slipped and fell and caught himself, and that is when he felt the burning in
his neck and shoulder area.  The exiting
the vehicle [sic] caused him to do that.@  In describing the incident further, the
agreed statement of facts said, A[h]e
hung his foot on the raised portion of the door facing on his truck,@ ASturrock somehow injured his neck, shoulder, and upper back
as he was getting out of his pick-up,@
and ASturrock=s
injury on April 10 was not caused by an impact between any portion of his body
and any portion of his pickup.@

The personal injury protection (PIP) provisions of
Sturrock=s
policy say:

 

A.        We will pay Personal Injury Protection benefits because [of]
bodily injury:

1.         resulting from a motor vehicle accident; and

2.         sustained by a covered person.

                                                              *
* *

C.        ACovered
person@ as used
in this Part means:

1.         You or any family member:

a.         while occupying; or

b.         when struck by;

a motor vehicle designed for use mainly on public
roads or a trailer of any type.

2.         Any other person while occupying your covered auto with your
permission.

 

The trial court concluded that Sturrock=s injuries were covered.  A divided court of appeals affirmed.[1]  

There is no dispute that Sturrock
is a Acovered
person.@  The parties so stipulated.  There is no dispute that Sturrock
was occupying a motor vehicle at the time of his injury.  But coverage under the PIP provisions does
not attach simply because an insured was injured A[w]hile occupying@
a covered motor vehicle.  A[B]odily
injury@ must Aresult[] from a motor vehicle accident.@

This Court had occasion in Farmers Texas County
Mutual Insurance Co. v. Griffin[2] to
construe the term Aauto
accident.@  Royal, the insured, was driving a vehicle
when his two passengers fired gun shots and wounded Griffin in the leg as he
walked down a street.  Griffin alleged
negligence and gross negligence.  The
issue was whether Royal=s
insurer was required to defend or indemnify him.[3]  Royal=s
policy said that the insurer A>will pay damages for bodily injury
or property damage for which any covered person becomes legally responsible
because of an auto accident.=@[4]  Coverage extended to A>you or any family member for the ownership,
maintenance, or use of any auto or trailer.=@[5]  We held that the term Aauto
accident@ is not
ambiguous.[6]  Quoting State Farm Mutual Insurance Co. v.
Peck,[7] we said,
A>The
term Aauto
accident@ refers
to situations where one or more vehicles are involved with another vehicle,
object, or person.=@[8]  We held, ATo
read Griffin=s
petition as alleging an >auto
accident= would
strain that term beyond any reasonable meaning.@[9]  Griffin=s
injuries were not from an auto accident, but from a drive-by shooting, even
though the shooter was using a covered vehicle for transportation at the time
of the shooting.

The Peck decision, cited in Griffin,
is instructive.  Salazar was a passenger
in Peck=s vehicle
while Peck, the insured, was taking her dog from a groomer to a
veterinarian.  Salazar was sitting in the
back seat with the dog when the dog bit him, inflicting severe lacerations to
his face.[10]  The insurer sought a declaratory judgment
that it had no obligation to defend Peck in Salazar=s
suit against her.[11]  The policy provided that the insured A>will
pay damages for bodily injury or property damage for which any covered person
becomes legally responsible because of an auto accident.=@[12]  The court of appeals held that the term Aauto accident@
was unambiguous, and that it must apply that term=s
Aordinary and generally accepted
meaning.@[13]  The court of appeals concluded Athat the ordinary and generally
accepted meaning of the term >auto
accident= refers
to situations where one or more vehicles are involved in some type of collision
or near collision with another vehicle, object, or person.@[14]  It then said, A[f]urthermore, we are persuaded that the automobile must, in
some manner, be involved in the accident,@
and A[t]he
mere fact that an accident takes place in or near an automobile does not mean
the accident was an >auto
accident.=@[15]

The ordinary, generally accepted meaning of Amotor vehicle accident@ does not call to mind tripping over
the threshold of a vehicle while exiting, notwithstanding a decision from a
court of appeals more than thirty years ago, which held that injury had
occurred in a motor vehicle accident when an insured with phlebitis in his leg Awas favoring it as he twisted in order
to get out of the car and as he did so his right knee caught and the cartilage
snapped.@[16]  This Court=s
decision in Mid-Century Insurance Co. of Texas v. Lindsey[17]
does not hold otherwise.

The Lindsey case construed another section
of the Texas standard auto policy, the uninsured/underinsured motorist
provision.[18]  Lindsey was the insured.  He was sitting in a car parked next to Metzer=s
truck when Metzer=s
nine-year-old son attempted to climb into the cab of the truck through its
sliding rear window and caused a gun on a gun rack mounted over the rear window
to discharge.  Lindsey was struck by the
gunshot.  After the $20,000 limits of Metzer=s
policy were paid, Lindsey sued his insurer under the uninsured/underinsured
motorist provisions.  The policy
provided:

 

AWe will pay damages which a covered
person is legally entitled to recover from the owner or operator of an
uninsured [or underinsured] motor vehicle because of bodily injury sustained by
a covered person, or property damage, caused by an accident.  

 

The
owner=s or
operator=s
liability for these damages must arise out of the ownership, maintenance or use
of the uninsured [or underinsured] motor vehicle.@[19]

 

The Court=s
decision in Lindsey primarily focused on the A>arise out of the ownership,
maintenance or use of the . . . motor vehicle=@
language.[20]  We examined decisions from this[21] and
other[22]
jurisdictions that had considered the meaning of Aarose
out of the use of a motor vehicle.@  We then looked, in particular, at situations
in which a gun was involved and whether and under what circumstances the
discharge of a firearm Aarose
out of the use@ of a
vehicle.[23]  We concluded that ALindsey=s injury arose out of the use of the Metzer truck@
because AMetzer=s
son=s sole purpose was to gain entry into the
truck to retrieve his clothing.@[24]  He was not playing with the gun, trying to
shoot it, or load or unload it.[25]  He was using the vehicle Aqua vehicle, rather than simply
as an article of property,@[26] and his
use of the underinsured vehicle injured the insured.

In the instant case, the policy provision at issue
does not contain the broad Aarise
out of the ownership, maintenance or use of the . . . motor vehicle@ language.  The policy instead says that coverage applies
only if there is Abodily
injury: resulting from a motor vehicle accident@
while a covered person is Aoccupying@ or Astruck
by@ a motor vehicle.  Sturrock=s injury occurred when he was alighting
from his vehicle.  But that does not
answer the question of whether his injury was one Aresulting
from a motor vehicle accident,@
as the PIP provisions of his policy require.

In Lindsey we only briefly discussed what
constitutes an Aauto
accident.@[27]  The policy provision required that the injury
result from Aan
accident.@  There was no question that the shooting in Lindsey
was Aan
accident.@  We explained that the boy Adid not intend to cause the shotgun to
discharge or Lindsey to be injured, nor was it reasonably foreseeable that
either consequence would result from the boy=s
trying to enter the pickup through the rear window.@[28]  But the insurer argued that Aaccident@
should be read to mean Aauto
accident.@  In addressing that argument, we assumed,
without deciding, that the term Aaccident@ as used in the uninsured/underinsured
motorist policy provision could be limited to an Aauto
accident.@  We then cited our decision in Griffin,
quoting its holding that A>[t]he term >auto
accident= refers
to situations where one or more vehicles are involved with another vehicle, object,
or person.=@[29]  We then concluded that A[n]othing in
the language or holding of either case suggests that an >auto
accident= requires
a collision or excludes occurrences like the one in this case.@[30]

Nothing in Lindsey suggests that the mere
fact that an accident took place in an automobile means that it was an Aauto accident.@  To the contrary, we cited Peck with
approval for the proposition that when a vehicle is merely the situs of the injury, there is no Aauto
accident.@[31]  We approved the rationale in Peck,
affirming Athat a
dog bite inflicted while the victim was in a car was not an auto accident.@[32]  The vehicle in Peck was being used for
transportation when the dog bite occurred, and it was certainly an accident
from the insured=s point
of view.  But the vehicle was merely the
location of an accident that could have occurred anywhere, just as Sturrock in the case presently before us could have tripped
and injured himself in many locales other than his parked truck.  By contrast, the accidental shooting in Lindsey
could only have occurred from use of the Avehicle
qua vehicle.@[33]  The shotgun was on a gun rack mounted to the
vehicle, and the boy came into contact with it when he was attempting to
retrieve his clothing stored in the vehicle. 
We said that A>[i]f the
discharge or incident could have occurred regardless of the vehicle, the courts
seem to be consistent in holding there is no coverage.=@[34]  Accordingly, we said that if the boy had been
handling the gun while in the vehicle and it had accidentally discharged, there
would have been no coverage.[35]  We recognized in Lindsey that the
question of whether there was even a use of a motor vehicle was Aa close case,@[36] as
evidenced by the numerous, sometimes conflicting decisions from other
jurisdictions.[37]

The Court today cites five cases from other
jurisdictions that find coverage when an insured is injured entering or exiting
a vehicle or is injured near a vehicle.[38]  But the policy language in each of these
cases is different from Texas=s
standard PIP provision.  Each of the
policy provisions afforded broader coverage than Texas=s
PIP provision, and most importantly, none of the policy provisions in those
cases required an auto or motor vehicle accident as a prerequisite to coverage.[39]

The Court cannot convincingly distinguish the
decisions that do deal with policies that require an auto or motor
vehicle accident in order for coverage to apply.  In Farmers Insurance Co. of Washington v. Grelis,[40] which
was cited and relied on in Peck,[41] the
policy provided coverage A>for injury to each insured person
caused by an automobile accident.=@[42]  The policy defined Aaccident@ as A>a sudden event . . . resulting in
bodily injury neither expected nor intended by the insured person.=@[43]  The policy defined A>injured person=@
as A>an
insured person who is injured by accident while occupying or being struck by an
automobile.=@[44]  The insured was in his van, parked on the
side of a boulevard when he allowed a stranger to enter and was then
robbed.  The robber tripped on a part of
the front seat of the van, which caused him to lunge forward and stab the
insured.  The robber then ordered the
insured to drive away.  The Washington
court held this was not an Aautomobile
accident.@[45]  That court reasoned that A[t]he fact that the van seats were
incidentally involved does not convert this incident into an >automobile accident.=@[46]  The court concluded that Acases construing the words >arising out of the ownership,
maintenance, or use of the owned automobile,=
a phrase which is common in many insurance policies . . . [are] of no
value because that language does not appear in the endorsement in question.@[47]

Subsequently, the Washington Supreme Court had
occasion to construe the term Amotor
vehicle accident@ when
used in a policy.  The policy provided
coverage for A>bodily injury to each insured
person caused by a motor vehicle accident.=@[48]  The insured owned a camper affixed to his
pickup.  When he purchased the camper, it
included an unattached wooden object intended as a step to facilitate entering
and exiting.  The insured was injured
when he was in a park for overnight camping and exited the camper.  He Astepped
down from the truck=s
tailgate onto the unattached wooden step that had been placed on the
ground.  The step somehow gave way,
causing [the insured] to fall.  In
falling, his arm caught on the edge of the tailgate, cutting it.@[49]  The Washington court held this was not a
motor vehicle accident.[50]  The court gave several examples of injuries
that might occur while entering or exiting a vehicle that would not Acomport with the plain, ordinary, and
popular meaning of that term,@
including entering and exiting pickups and sport utility vehicles.[51]  The court said:

 

An
image that easily comes to mind is an insured tripping while making the
oft-difficult step down from the high doorway of a pickup truck or sports
utility vehicle.  Another is trippingCover, say, the threshold or a seatbeltCwhile entering a vehicle.  Making all such accidents Amotor vehicle accidents@ for insurance purposes is a logical
extension of the Court of Appeals=
holding that Athe use
of a vehicle depends on an insured=s
ability to safely enter and exit it.@  However, this definition does not fit with Aa fair, reasonable, and sensible
construction as would be given to the contract by the average person
purchasing insurance.@  Nor would this construction of the term Amotor vehicle accident@ comport with the plain, ordinary, and
popular meaning of that term.[52]

 

The Washington Supreme Court correctly discerned
that there are quite a number of insurance policies that use language much
broader than Abodily
injury resulting from a motor vehicle accident,@
which is the language in the Texas personal injury protection provisions.  Cases construing policies with broader
language, including those relied upon by the Court in this case, are inapposite
when faced with a policy that requires a Amotor
vehicle accident@ or Aauto accident.@

Even when the language is broader and does not
require an auto or motor vehicle accident, courts are divided on what is and is
not covered.  Courts have found no
coverage under policy provisions covering (or directed by statute to cover)
injuries incurred when Aoccupying,
entering into, alighting from or using an automobile,@[53] or from
the Ause of
the automobile . . . while in or upon, entering or alighting from the
automobile,@[54] or Aarising out of operation, maintenance
or use@ of a
vehicle,[55]
or Aarising out of the maintenance or use@ of a vehicle,[56] or
simply Aarising
out of the use@ of a
vehicle.[57]  Conversely, coverage has been found when a
policy covers (or is required by statute to cover) injury Aarising out of the ownership,
maintenance or use@ of a
vehicle,[58]
or Aarising out of maintenance or use@ of a vehicle,[59] or Awhile occupying@
a vehicle,[60]
or Awhile alighting@
a vehicle,[61]
or simply Aarising
out of use@ of a
vehicle.[62]

To bolster its conclusion that Sturrock=s injuries come within the PIP
provision, the Court cites a number of decisions that hold there is coverage
when a vehicle collides with someone entering or exiting a covered vehicle.[63]  But no one questions that there has been an
auto or motor vehicle accident when a vehicle strikes a pedestrian.

The Court cites two Texas cases to support its holding.  One is Southern Surety Co. v. Davidson,[64] in
which the policy did not require an auto or motor vehicle accident.  The policy was not even an automobile
liability policy.  It covered A>[t]he
effects resulting exclusively of all other causes from bodily injury sustained
by the insured during the life of this policy solely through external, violent
and accidental means.=@[65]  The other case cited by the Court is Berry
v. Dairyland County Mutual Insurance Co. of Texas
in which the court of appeals concluded Athe
phrase >motor
vehicle accident= can be
construed as having more than one meaning@
and that it was therefore the court=s
Aduty . . . to give the phrase
the construction that is most favorable to the insured.@[66]  As discussed above, this Court has since held
that the term Aauto
accident@ is
unambiguous,[67]
and Berry=s holding
is therefore unsound.

II

Sturrock contends that
the policy=s
provision requiring a Amotor
vehicle accident@ as a
prerequisite for coverage contravenes the statute that governs PIP provisions
in Texas.[68]  I disagree. 
First enacted in 1973,[69] that
statute requires automobile liability insurance policies to offer PIP coverage.[70]  It says, 

 

No automobile liability insurance policy,
including insurance issued pursuant to an assigned risk plan established under
authority of Section 35 of the Texas Motor Vehicle Safety‑Responsibility
Act, covering liability arising out of the ownership, maintenance, or use of
any motor vehicle shall be delivered or issued for delivery in this state
unless personal injury protection coverage is provided therein or supplemental
thereto.[71]

   

The statute=s
definition of Apersonal
injury protection@ is
detailed, but it does not specify whether merely Aan
accident@ will
trigger coverage or whether a Amotor
vehicle accident@ is
required.[72]  The statute uses the term Athe accident@
six times, and the phrase Athe
date of accident@ once,
without expressing whether Athe
accident@
contemplates, or does not contemplate, an automobile or motor vehicle accident:

 

(b) APersonal
injury protection@ consists
of provisions of a motor vehicle liability policy which provide for payment to
the named insured in the motor vehicle liability policy and members of the
insured=s
household, any authorized operator or passenger of the named insured=s motor vehicle including a guest
occupant, up to an amount of $2,500 for each such person for payment of all
reasonable expenses arising from the accident and incurred within three
years from the date thereof for necessary medical, surgical, X‑ray and
dental services, including prosthetic devices, and necessary ambulance,
hospital, professional nursing and funeral services, and in the case of an
income producer, payment of benefits for loss of income as the result of the
accident; and where the person injured in the accident was not an
income or wage producer at the time of the accident, payments of
benefits must be made in reimbursement of necessary and reasonable expenses
incurred for essential services ordinarily performed by the injured person for
care and maintenance of the family or family household.  The insurer providing loss of income benefits
may require, as a condition of receiving such benefits, that the insured person
furnish the insurer reasonable medical proof of his injury causing loss of
income.  The personal injury protection
in this paragraph specified shall not exceed $2,500 for all benefits, in the
aggregate, for each person.

 

(c) The benefits required by this Act shall be
payable without regard to the fault or non‑fault of the named insured or
the recipient in causing or contributing to the accident, and without
regard to any collateral source of medical, hospital, or wage continuation
benefits.  An insurer paying benefits
pursuant to this Act shall have no right of subrogation and no claim against
any other person or insurer to recover any such benefits by reason of the
alleged fault of such other person in causing or contributing to the
accident.

 

(d) All payments of benefits prescribed under this
Act shall be made periodically as the claims therefor
arise and within thirty (30) days after satisfactory proof thereof is received
by the insurer subject to the following limitations:

 

(1) The coverage described in this Act may
prescribe a period of not less than six months after the date of accident
within which the original proof of loss with respect to a claim for benefits
must be presented to the insurer.[73]

 

The decision in Le v. Farmers Texas County
Mutual Insurance Co. considered whether this statute permitted the State Board
of Insurance to promulgate a policy that required a Amotor
vehicle accident@ and
concluded that it did.[74]  That court reasoned that A[i]t is
likely that the statewide cost for injuries which happen to occur in a car is
higher than the cost of paying for injuries which result from a motor vehicle
accident.@[75]  It gave deference to the Board, concluding, A[w]e do not find the Board=s construction repugnant to the
statute.@[76]  The court of appeals disagreed with Berry
v. Dairyland County Mutual Insurance Co., which
had decided, in resolving a venue plea, that the term Amotor
vehicle accident@ was
repugnant to article 5.06-3.[77]

The reasoning in Le v. Farmers Texas County
Mutual Insurance Co. is sound.  It is
certainly reasonable and permissible under article 5.06-3 for a policy
providing personal injury protection to require the occurrence of a Amotor vehicle accident@ before coverage is applicable.  The coverage afforded under article 5.06‑3(c)
is in addition to any other insurance coverage, including medical insurance.[78]  An insurer paying personal injury protection
coverage has no right of subrogation for the fault of another person in causing
or contributing to Athe
accident.@[79]  Article 5.06-3 does not prohibit automobile
policies issued in this state from requiring that the injuries be sustained as
a result of a Amotor
vehicle accident.@

* * * * *

We are constrained by the policy=s language.  Sturrock=s injuries did not constitute Abodily injury . . . resulting
from a motor vehicle accident.@  I would reverse and render judgment for the
insurer in this case.

 

 

 

 

 

 

 

______________________________

Priscilla R. Owen

Justice

 

 

OPINION
DELIVERED:  August 27, 2004

 











[1] 65 S.W.3d 763.





[2] 955 S.W.2d 81 (Tex. 1997).





[3] Id. at 81.





[4] Id. at 82.





[5] Id.





[6] Id. at 83.





[7] 900 S.W.2d 910, 913 (Tex. App.BAmarillo 1995, no writ).





[8] 955 S.W.2d at 83. 
We omitted the words Ain some type of collision or near collision@ from this quote, without indicating the
omission.  The statement in Peck
was: A[T]he term >auto
accident= refers to situations where one or more vehicles are
involved in some type of collision or near collision with another vehicle,
object, or person.@  900 S.W.2d at
913.  





[9] 955 S.W.2d at 83. 





[10] Peck, 900 S.W.2d at 911.





[11] Id. at 912.





[12] Id. at 911-12.





[13] Id. at 913.





[14] Id.





[15] Id.





[16] Berry v. Dairlyland
County Mut. Ins. Co. of Tex., 534 S.W.2d 428, 429
(Tex. Civ. App.BFort
Worth 1976, no writ).





[17] 997 S.W.2d 153 (Tex. 1999).





[18] Id. at 154.





[19] Id. at 155 (alteration in original).





[20] Id. at 156-64.





[21] Id. at 156 n.11, 157 n.18.





[22] Id. at 157 n.21.





[23] Id. at 157-61 & nn.21, 25 & 26.





[24] Id. at 158.





[25] Id.





[26] Id. at 156.





[27] Id. at 155-56.  





[28] Id. at 155.





[29] Id. (quoting Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 83 (Tex. 1997)
(quoting State Farm Mut. Ins. Co. v. Peck, 900
S.W.2d 910, 913 (Tex. App.BAmarillo 1995, no writ) (words omitted from Peck
by Griffin not indicated in the text of Griffin))).





[30] Id. at 156.





[31] See id.





[32] Id.





[33] Id.





[34] Id. at 159 (alteration in original) (quoting 8
Couch on Insurance 3d ' 119:64, at 119-98 (1997)).





[35] Id.





[36] Id.





[37] Id. at 157 n.21, 158 n.22, 159 n.25, 161 n.26,
162 nn.27-30.





[38] See __ S.W.3d at __ n.__.





[39] See Walker v. M&G Convoy, Inc., No.
CIV.A.88C-DE-191, 1989 WL 158511, at *1 (Del. Super. Ct. Nov. 2, 1989) (finding
coverage when statute provided that PIP coverage shall apply to each person Aoccupying a motor vehicle@ and plaintiff slipped and fell on ice while walking
around his employer=s car trailer, onto which he was loading new cars, the
engine was running and plaintiff was preparing to travel with the loaded
trailer); Padron v. Long Island Ins. Co.,
356 So.2d 1337, 1338-39 (Fla. Dist. Ct. App. 1978) (finding coverage when PIP
statute said A>bodily injury . . . arising out of the ownership,
maintenance, or use of a motor vehicle=@ and
insured=s foot slipped as he was exiting the vehicle Acausing his right leg to hit the bottom part of the
car door and break his leg.  The
plaintiff did not slide out of the car, but injured himself on the car door
threshold as he was alighting therefrom.@); Putkamer v.
Transamerica Ins. Corp. of Am., 563 N.W.2d 683, 686 (Mich. 1997) (finding coverage
under statute requiring coverage forA>accidental
bodily injury arising out of the ownership, operation, maintenance or use of a
motor vehicle as a motor vehicle=@ and the
statute said A>[a]ccidental bodily injury
does not arise out of the ownership, operation, maintenance, or use of a parked
vehicle as a motor vehicle unless . . . [T]he injury was sustained by a
person while occupying, entering into, or alighting from the vehicle=@ when the insured fell on ice as she placed her foot
on the floor board of her car (alteration and emphasis in original)); Haagenson v. Nat=l Farmers Union Prop. & Cas.
Co., 277 N.W.2d 648, 650-51 (Minn.
1979) (finding coverage under statute that required coverage for A>injury arising out of the maintenance or use of a
motor vehicle=@ and the policy said A>[m]aintenance or use of a motor vehicle=@ includes use A>[i]ncident to its maintenance or
use as a vehicle, occupying, entering into, and alighting from it=@ when passenger accompanied a friend to the scene of
an accident and was electrocuted by a downed power line as he was opening the
door of his vehicle (alterations added)); Hill v. Metro. Suburban Bus Auth.,
555 N.Y.S.2d 803, 805 (N.Y. App. Div. 1990) (finding coverage under statute
covering A>use or operation=@ of a
bus when the bus door caught the plaintiff=s arm
and she tripped on a nail or tile on the staircase of the bus, lost her
footing, and fell to the sidewalk).





[40] 718 P.2d 812 (Wash. Ct. App. 1986).





[41] 900 S.W.2d at 913.





[42] Grelis, 718 P.2d at
813.





[43] Id.





[44] Id.





[45] Id.





[46] Id.  





[47] Id. at 814.





[48] Tyrrell v. Farmers Ins. Co. of Wash., 994 P.2d
833, 835-36 (Wash. 2000).





[49] Id. at 835.





[50] Id. at 838.





[51] Id. at 837.





[52] Id. (citations omitted); see also State
Farm Mut. Auto. Ins. Co. v. Rains, 715 S.W.2d
232, 233 (Ky. 1986) (finding that there was no Amotor
vehicle accident@ in two separate, consolidated cases when, in the
first case, the insured was hit in the head by an assailant with a baseball bat
while trying to enter his vehicle, and in the second case, when the insured was
in a vehicle that overturned when the driver was shot and killed, and the
insured was shot while crawling out of the vehicle); Jordan v. United
Equitable Life Ins. Co., 486 S.W.2d 664, 666 (Mo. Ct. App. 1972) (finding
no coverage under a policy that required Aaccidental
bodily injury@ caused Asolely
by reason of an automobile . . . accident@ when the insured taxicab driver was robbed and shot
to death by his passenger); but see Ganiron
v. Haw. Ins. Guar. Assoc., 744 P.2d 1210, 1212 (Haw. 1987) (finding
coverage under policy that required a Amotor
vehicle accident@ for insured who was struck by a bullet from a gun
fired from another vehicle on the freeway); Union Mut.
Fire Ins. Co. v. Commercial Union Ins. Co., 521 A.2d 308, 310 (Me. 1987)
(finding coverage under policy that required an Aauto
accident@ when on hunting trip, insured=s shotgun accidentally discharged, injuring passenger,
when insured reached for the gun, which was in the back seat); State Capital
Ins. Co. v. Nationwide Mut. Ins. Co., 350 S.E.2d
66, 67 (N.C. 1986) (finding coverage under policy that required Abodily injury . . . for which any covered
person becomes legally responsible because of an auto accident@ when passenger was injured when a rifle accidentally
discharged as the insured reached into the vehicle to retrieve a gun; rifle was
not stored in a gun rack, but in a storage area behind the driver=s seat).





[53] Kordell v.
Allstate Ins. Co., 554 A.2d 1, 2 (N.J. Super. Ct. App. Div. 1989) (finding
no coverage when PIP statute said Asustained
bodily injury as a result of an accident while occupying, entering into,
alighting from or using an automobile@ and
insured died of a heart attack while stopped at a red light).





[54] Ross v. Protective Indem.
Co., 62 A.2d 340, 341 (Conn. 1948) (finding no coverage under policy that
required Abodily injury, caused by accident and arising out of
the use of the automobile . . . while in or upon, entering or
alighting from the automobile@ when passengers exited from vehicle that had pulled
onto the shoulder, went to the rear of the vehicle to urinate, and were struck
by another vehicle while conversing after urinating).





[55] Boykin v. State Farm Mut.
Auto. Ins. Co., 393 S.E.2d 470, 471 (Ga. Ct. App. 1990) (finding no
coverage when statute said A>accidental bodily injury=@
includes A>bodily injury . . . arising out of the
operation, maintenance, or use of a motor vehicle [as a motor vehicle] which is
accidental=@ when insured slipped on wet oily pavement about two
feet from her car as she was approaching the vehicle after stopping at a
convenience store for fueling); Cole v. N.H. Ins. Co., 373 S.E.2d 36,
37, 38 (Ga. Ct. App. 1988) (finding no coverage when statute provided A>A a]ccidental bodily injury@= means bodily injury . . . arising out of
the operation, maintenance, or use of a motor vehicle. . . . >[o]ccupying= means to be in or upon a motor vehicle or engaged in
the immediate act of entering into or alighting from the motor
vehicle. . . . >A[o]peration, maintenance, or
use of a motor vehicle@= means operation, maintenance, or use of a
motor vehicle as a vehicle@ and
insured slipped and fell while walking around her car after she had pumped and
paid for gasoline, striking her arm on the fender and her knee on the
pavement).





[56] Marklund v. Farm
Bureau Mut. Ins. Co., 400 N.W.2d 337, 338 n.2,
341 (Minn. 1987) (finding no coverage under statute that said Ainjury arising out of the maintenance or use of a
motor vehicle@ when insured slipped on ice and fell on a
self-service gasoline station=s concrete apron after filling and capping his car=s gas tank; insured did not come into physical contact
with the vehicle after completing the refueling operation, although he was
walking toward the passenger seat with the intention of getting a check from
his wife to pay for the gas).





[57] Classified Ins. Corp. v. Vodinelich,
368 N.W.2d 921, 923 (Minn. 1985) (finding no coverage under policy that
required Aarising out of the use@ of a
motor vehicle when children died of carbon monoxide poisoning when their mother
committed suicide by running the insured vehicle in an enclosed garage while
leaving the door to the house ajar).





[58] Padron v. Long
Island Ins. Co., 356 So.2d 1337, 1338 (Fla. Dist. Ct. App. 1978) (finding
coverage when PIP statute said A>bodily injury . . . arising out of the ownership,
maintenance, or use of a motor vehicle=@ and
insured=s foot slipped as he was exiting the vehicle Acausing his right leg to hit the bottom part of the
car door and break his leg.  The
plaintiff did not slide out of the car, but injured himself on the car door
threshold as he was alighting therefrom@).





[59] Blish v. Atlanta Cas. Co., 736 So.2d 1151, 1153, 1155 (Fla. 1999)
(finding coverage under PIP policy provision that required injury A>arising out of the ownership, maintenance, or use of a
motor vehicle=@ when insured was attacked by several assailants after
his tire blew out and he stopped to change it); Hernandez v. Protective Cas. Ins. Co., 473 So.2d 1241, 1242-43 (Fla. 1985)
(finding coverage under PIP policy provision that required injury A>arising out of the ownership, maintenance or use of a
motor vehicle=@ when insured suffered injuries in the course of his
arrest for an alleged traffic violation; supreme court inferred insured was
occupying the vehicle at the time); Barry v. Ill. Farmers Ins. Co., 386
N.W.2d 299, 300-01 (Minn. Ct. App. 1986) (finding coverage under policy that
said A>maintenance or use of a motor vehicle=@ means A>maintenance
or use of a motor vehicle as a vehicle, including, incident to its maintenance
or use as a vehicle, occupying, entering into, and alighting from it=@ when insured backed vehicle out of her garage, got
out to close the garage door with vehicle idling and slipped and fell on the
ice as she approached the car door to get back in); Jorgensen v. Auto-Owners
Ins. Co., 360 N.W.2d 397, 399-401 (Minn. Ct. App. 1985) (finding coverage
when statute said A>all loss suffered through injury arising out of the
maintenance or use of a motor vehicle=@ and A>maintenance or use of an automobile=@ means A>maintenance
or use of a motor vehicle as a vehicle, including, incident to its maintenance
or use as a vehicle, occupying, entering into, and alighting from it.  Maintenance or use . . . does not
include . . . loading and unloading the vehicle unless the conduct
occurs while occupying, entering into or alighting from it=@; plaintiff was burned when he caught fire after a can
of gasoline stored inside the trunk of his father=s car
exploded as he was opening the trunk to retrieve some jumper cables; plaintiff
was not injured by the initial explosion; rather, he was injured when he
reached in to remove the gas can, fearing that the car would blow up or cause
the gas station (where the car was) to explode, and he tipped or caught the
gasoline can on the trunk of the insured vehicle, causing gasoline to spill on
himself; the parties stipulated that a defective trunk wire ignited the gas
fumes); Spisak v. Nationwide Mut. Ins. Co., 478 A.2d 891, 892 (Pa. Super. Ct. 1984)
(finding coverage under policy that required losses sustained A>as a result of an accident that arises out of the
maintenance or use of a motor vehicle as a motor vehicle=@ when insured and a female companion died of carbon
monoxide poisoning in the backseat of the insured vehicle while engaging in sex
acts with one another).





[60] Walker v. M&G Convoy, Inc., No.
CIV.A.88C-DE-191, 1989 WL 158511, at *1 (Del. Super. Ct. Nov. 2, 1989) (finding
coverage when statute provided that PIP coverage shall apply to each person Aoccupying a motor vehicle@ and plaintiff slipped and fell on ice while walking
around his employer=s car trailer, onto which he was loading new cars, the
engine was running, and plaintiff was preparing to travel with the loaded
trailer).





[61] Mid-Continent Cas. Co.
v. Giuliano, 166 So.2d 443, 445 (Fla. 1964)
(finding coverage under PIP policy provision that required Abodily injury . . . caused by accident while
. . . alighting from@ the insured motor vehicle when insured injured his
back while exiting the insured motor vehicle).





[62] State Farm Mut. Auto.
Ins. Co. v. Barth, 579 So.2d 154, 155 (Fla. Dist.
Ct. App. 1991) (finding coverage under PIP policy provision that required A>loss sustained . . . as a result of bodily
injury . . . arising out of . . . use of a motor
vehicle=@ when insured was attacked by an assailant while
sitting in her car, struggled free, and fell out the driver=s door).





[63] __ S.W.3d at __ & n.__.





[64] 280 S.W. 336 (Tex. Civ.
App.BFort Worth 1926, no writ).





[65] Id. at 336 (alteration added).





[66] 534 S.W.2d 428, 433 (Tex. Civ.
App.BFort Worth 1976, no writ).





[67] Farmers Tex. County Mut.
Ins. Co. v. Griffin, 955 S.W.2d 81, 83 (Tex. 1997).





[68] Tex. Ins. Code
art. 5.06-3.





[69] Act of April 11, 1973, 63d Leg., R.S., ch. 52, ' 1, 1973 Tex. Gen. Laws 90, 90-93.





[70] Tex. Ins. Code
art. 5.06-3(a).





[71] Id.





[72] Id. art. 5.06-3(b)-(h).





[73] Id. art. 5.06-3(b), (c), (d)(1) (emphasis
added).





[74] 936 S.W.2d 317, 323-24 (Tex. App.BHouston [1st Dist.] 1996, writ denied).





[75] Id. at 324.





[76] Id.





[77] 534 S.W.2d 428, 431 (Tex. App.BFt. Worth 1976, no writ).





[78] Tex. Ins. Code
' 5.06-3(c).





[79] Id.