[891 NYS2d 886]

STEPHEN LEWICKI, Plaintiff, v GARY LONGSHORE et al., Defendants.

Supreme Court, Kings County, December 7, 2009

**APPEARANCES OF COUNSEL**

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, White Plains (*Lindsay J. Kalick* of counsel), for defendants. *Robinson & Yablon, P.C.*, New York City (*Lawrence T. Yablon* of counsel), for plaintiff.

## OPINION OF THE COURT

MARTIN SCHNEIER, J.

The primary issue presented in this motor vehicle personal injury action is, has plaintiff who was struck by a motor vehicle on February 22, 2006 sustained a "serious injury" under New York's No-Fault Insurance Law when he alleges that his heart attack, more than two years later, on November 17, 2008, was caused by the prior motor vehicle accident? Is this a "permanent consequential limitation of use of a body organ" as is required by the No-Fault Insurance Law? (Insurance Law § 5102 [d]; § 5104.) This is apparently an issue of first impression in this state.

## Background

Defendants move, pursuant to CPLR 3212, for summary judgment on the ground that plaintiff did not sustain a "serious injury" as is required by Insurance Law § 5102 (d) and § 5104.

On February 22, 2006, plaintiff Stephen Lewicki was walking within the crosswalk at the intersection of East 17th Street and Avenue O in Brooklyn when he was struck by a van operated by defendant Gary Longshore and owned by defendant DHL Express USA, Inc.

Lewicki was taken by ambulance to Beth Israel New York Community Hospital where in the emergency room he complained of left chest and left arm pain and right knee pain. Plaintiff was then admitted to the hospital for overnight observation and further testing.

The hospital chart indicates that on February 23, 2006 an echocardiogram (ECHO) was performed. Plaintiff had an abnormal ECHO, with evidence of left ventricular hypertrophy and with ventricular premature contractions (VPCs) noted. The ECHO also showed evidence of a mitral valve prolapse, 2t mitral regurgitation, mild pulmonary hypertension, and a dilated left ventricle.

After his discharge from the hospital plaintiff came under the care of a cardiologist, Dr. Howard Newhouse. Dr. Newhouse prescribed Toprolol (a beta-blocker to help reduce plaintiff's incidence of VPCs) and ordered an event recorder, to further explore his cardiac electrical system.

Plaintiff thereafter was treated by a cardiologist, Dr. Joseph Schwartz, who increased his heart medications and continued to perform heart tests.

Plaintiff testified at his examination before trial in pertinent part as follows:

"Q. Did Dr. Newhouse specifically tell you your chest pains were caused by the motor vehicle accident?

"A. Hundred percent.

"Q. Did Dr. Schwartz tell you the chest pains were caused by the accident?

"A. His diagnosis was in line with what Newhouse found, Yes."

On November 17, 2008 plaintiff sustained an out-of-hospital sudden cardiac arrest or heart attack and was hospitalized at Interfaith Medical Center. He was then transferred to New York Methodist Hospital where a cardiac workup was performed and, on November 26, 2008, an implantable cardiac defibrillator (ICD) was inserted into plaintiff's chest.

Plaintiff, in his bill of particulars, alleges in pertinent part as follows:

"Plaintiff, Stephen Lewicki sustained the following serious injuries:

"-Contusion of the Chest Wall . . .

"-Trauma to the Chest;

"-Myocardial injury;

"-Traumatically Induced Pulmonary Hypertension;

"-Traumatically Induced Left Ventricular Hypertrophy;

"-Traumatically Induced Left Cardiomyopathy;

"-Hemothorax;

"-Acute Myocardial Infraction."

On March 31, 2009 plaintiff was examined by defendant's cardiologist, Dr. Paul K. Wein. Dr. Wein, in his affirmed report submitted by defendants in support of the motion, in pertinent part, states:

"*IMPRESSION:* . . .

"3. Status-post cardiac arrest etiology remains unclear.

"4. Status-post insertion of internal defibrillator . . .

"At this time, it does not appear that the claimant's cardiac problems are in anyway related to the accident of 2/22/06 . . .

"What remains in question is the cause of the cardiac arrest and the indications for the insertion

of internal defibrillator. It is difficult to find any clear causal relationship between these cardiac problems and the accident in question."

Dr. Bruce Charash, plaintiff's cardiologist, in his affirmation submitted by plaintiff in opposition, in pertinent part, states:

"To a reasonable degree of medical certainty, as a result of the collision, Mr. Lewicki sustained a cardiac contusion.

"To a reasonable degree of medical certainty the cardiac arrest was directly and causally related to the February 22, 2006 motor vehicle collision.

"Further, to a reasonable degree of medical certainty, being struck by the motor vehicle resulted in a contusion to the heart, which resulted in a focus of electrical instability causing VPCs, palpitations and ultimately cardiac arrest . . .

"All of Mr. Lewicki's symptoms began after he was struck in the motor vehicle collision.

"In my opinion to a reasonable degree of medical certainty . . . if Mr. Lewicki had not been struck by a motor vehicle, he would not have had a cardiac arrest, nor would he have required an ICD . . .

"To a reasonable degree of medical certainty, Mr. Lewicki has sustained significant limitation of function of heart."

Plaintiff had arthroscopic surgery performed on his right knee on May 2, 2008 at Beth Israel New York Community Hospital.

On May 6, 2009 plaintiff was examined by defendants' orthopedist, Dr. Robert Israel, who found that the "range of motion of the knee is normal."

On July 27, 2009 plaintiff was examined by an orthopedist, Dr. Pushp R. Bhansali, who found "objective evidence of right knee impairment including significant restriction of mobility." The doctor further opines that "with a reasonable degree of medical certainty, Mr. Lewicki has sustained a significant limitation of function of his neurological and musculoskeletal system."

Plaintiff further claims that he could not perform his usual daily activities for 90 out of the 180 days following the subject accident.

Defendants argue,

"none of the plaintiff's testimony nor the medical records presented come close to establishing a medi-

cally determined injury or impairment of a nonpermanent nature arising from the alleged occurrence which prevented plaintiff from performing substantially all of the material acts which constituted his usual and customary daily activities for the statutory period."

The note of issue was filed on April 13, 2009 and the trial is scheduled for February 9, 2010.

### Discussion

Summary judgment is a drastic remedy that should only be employed when there is no doubt as to the absence of any triable issues of a material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2d Dept 2005]). "Issue finding, rather than issue determination, is the court's function. If there is any doubt about the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment should be denied" (*Celardo v Bell*, 222 AD2d 547, 548 [2d Dept 1995] [citations omitted]). "In the context of a motion for summary judgment, the court is obliged to draw all reasonable inferences in favor of the non-moving party, and may not pass on issues of credibility" (*Rizzo v Lincoln Diner Corp.*, 215 AD2d 546, 546 [2d Dept 1995]).

Insurance Law § 5104 provides, in pertinent part, that "(a) Notwithstanding any other law, in any action . . . for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery . . . except in the case of a serious injury."

Insurance Law § 5102 (d) provides, in pertinent part, that

"(d) 'Serious injury' means a personal injury which results in . . . permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence of the injury or impairment."

The No-Fault Insurance Law plainly and unambiguously requires the existence of the "serious injury" threshold as a jurisdictional prerequisite that a motor vehicle personal injury plaintiff must both plead and prove.

Defendants, as the movants, have the initial burden of showing that the plaintiff did not sustain a "serious injury" as defined by Insurance Law § 5102 (d). Defendants can meet this burden by establishing that the plaintiff has no injury or no limitations as a result of the injury, or by showing that the injury is not causally related to the accident. If the court finds that the defendants have met their initial burden, the burden shifts to the plaintiff to demonstrate that he sustained a "serious injury" within the meaning of the No-Fault Insurance Law (*Gaddy v Eyler*, 79 NY2d 955, 957 [1992]; *Staff v Yshua*, 59 AD3d 614 [2d Dept 2009]).

The heart is "a hollow muscular cone-shaped organ" (The Bantam Medical Dictionary 320 [6th ed 2009]). Cardiac arrest is "[t]he sudden cessation of effective pumping action of the heart because the heart stops beating altogether . . . Unless treated promptly, irreversible brain damage and death follows within minutes" (The Bantam Medical Dictionary 112-113 [6th ed 2009]).

The framers of New York's No-Fault Insurance Law sought to remove less serious claims from the courts (*Hill v Metropolitan Suburban Bus Auth.*, 157 AD2d 93 [2d Dept 1990]). As the Court of Appeals succinctly stated in *Dufel v Green* (84 NY2d 795, 798 [1995]), "the legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries."

The court is sensitive to the need to screen out cases of minor injuries. However, injury to the heart cannot be considered to be the slight or mild damage for which the no-fault statute bars recovery.

It obviously cannot be successfully argued by defendants that the sudden cardiac arrest of the heart organ of the plaintiff was not a life threatening serious injury with permanent consequential heart damage. If the plaintiff's heart attack was caused by the accident then his claim is not frivolous and he sustained a "permanent consequential limitation of use of a body organ." Thus, the only issue in the instant case is was plaintiff's sudden cardiac arrest on November 17, 2008 caused by the subject accident of February 22, 2006?

Defendants submit, in support of their argument that the subject motor vehicle accident was not the proximate cause of plaintiff's sudden cardiac arrest, the affirmation of Dr. Paul K. Wein. Nowhere in his affirmation does Dr. Wein state: "to a reasonable degree of medical certainty plaintiff's sudden cardiac

arrest on November 17, 2008 was not caused by his motor vehicle accident on February 22, 2006." The assertion that "it does not appear that the claimant's cardiac problems are in anyway related to the accident" falls short of excluding that possibility to a reasonable degree of medical certainty. In fact, Dr. Wein states that he is uncertain as to the cause of the sudden cardiac arrest. He states, "*IMPRESSION*: . . . Status-post cardiac arrest etiology [causation] remains unclear . . . What remains in question is the cause of the cardiac arrest and the indications for the insertion of internal defribrillator."

Thus, defendants' submission is clearly insufficient to establish, prima facie, their entitlement to summary judgment with respect to plaintiff's heart condition claim on the ground that the plaintiff did not sustain "a serious injury" as defined by Insurance Law § 5102 (d).

Since defendants failed to meet their prima facie burden, it is unnecessary to decide whether the papers submitted by the plaintiff in opposition were sufficient to raise a triable issue of fact (*Mannix v Lisi's Towing Serv., Inc.*, 67 AD3d 977 [2d Dept 2009]; *Spanos v Harrison*, 67 AD3d 893 [2d Dept 2009]; *Giammanco v Valerio*, 47 AD3d 674 [2d Dept 2008]; *Coscia v 938 Trading Corp.*, 283 AD2d 538 [2d Dept 2001]).

In light of the court's determination that defendants failed to meet their burden regarding plaintiff's "serious injury" heart condition claim the defendants' remaining contentions of lack of "serious injury" are academic and need not be reached.

### Conclusion

Based on the foregoing, the motion for summary judgment by defendants is denied.