**STATE FARM MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Emma S. PECK and American States Insurance Company, Appellees.**

No. 07–94–0085–CV.

Court of Appeals of Texas, Amarillo.

May 30, 1995.

Rehearing Denied June 21, 1995.

George L. Thompson, III, Thompson & Thomas, Ralph H. Brock, Lubbock, for appellant.

John Simpson, Splawn & Simpson, Jack O. Nelson, Jr., Nelson & Nelson, Lubbock, E. Thomas Bishop, Erik E. Ekvall, Alexander N. Beard, E. Thomas Bishop, Dallas, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

The issue presented by this appeal is whether a dog bite occurring inside an automobile constitutes an "auto accident" under an auto liability insurance policy that does not define the term "auto accident." Answering in the negative, we affirm in part, and reverse and render in part.

The record shows that Emma S. Peck, the insured, used her vehicle on May 10, 1991, to take her dog to the dog groomers and the veterinarian. Isaiah Jacob Salazar was a passenger in Peck's vehicle and sat in the back seat with the dog. The dog bit Salazar on the way from the dog groomers to the veterinarian. Salazar, allegedly, sustained severe lacerations to his face as a result of the dog bite. Peck's vehicle did not collide with any other vehicle or object and sustained no physical damage as a result of the occurrence.

Norma Irene Lopez, individually, and as next friend for Salazar, filed suit against Peck for personal injury damages sustained as a result of the dog bite. Lopez alleged that Peck was negligent in failing to confine and restrain the dog in a secure place while Salazar was under her care and supervision.

Appellant, State Farm Mutual Insurance Company ("State Farm"), had issued an automobile liability insurance policy ("the auto policy") to Peck, which was in full force and effect on the date of the alleged injury. The vehicle used by Peck on the date of the incident was insured under the auto policy. The liability coverage section of the auto policy provides that State Farm "will pay damages for bodily injury or property dam-

age for which any covered person becomes legally responsible because of an *auto accident.*" (Emphasis added). As a result, Peck looked to State Farm to defend her in the law suit filed by Lopez.

State Farm filed this declaratory judgment action against Peck seeking a determination that it had no duty to defend Peck or pay any judgment that might be rendered against her in the personal injury suit filed by Lopez. State Farm joined American States Insurance Company ("American States"), who was Peck's homeowner's insurance carrier.

Peck filed a general denial to State Farm's declaratory judgment action and counterclaimed against State Farm for attorney's fees. Peck also filed a cross-action against American States for attorney's fees. Peck sought no other affirmative action against State Farm or American States.

American States responded to State Farm's declaratory judgment action and Peck's cross-action by a general denial and an affirmative assertion that Salazar's alleged injuries "arose out of the use of" Peck's vehicle and that such injuries were excluded from coverage under the homeowner's policy issued to Peck. Also by its pleadings, American States sought its attorney's fees.

After reviewing the stipulated facts, pleadings, and arguments of counsel, the trial court ruled that State Farm had a duty to defend Peck and that American States did not have such a duty. State Farm perfected this appeal from the trial court's judgment.

■ By its first point of error, State Farm contends the trial court erred in rendering judgment that American States had no duty to defend Peck under its homeowner's policy. In that regard, we point out that an appealing party may not complain of errors which do not injuriously affect it or which merely affect the rights of others. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 92 (Tex.1973). Thus, because the judgment declaring that American States has no duty to defend Peck under the homeowner's policy does not affect the rights or obligations of State Farm, it cannot complain of that portion of the judgment. Likewise, American States has no standing to present arguments in support of the portion of the judgment declaring that State Farm has a duty to defend Peck in the underlying personal injury suit pursuant to the terms of the auto policy.

■ Any error in the trial court's judgment concerning American States' duty to defend Peck in the underlying personal injury suit was a matter for Peck to challenge on appeal since that portion of the judgment was adverse to her and involved only her rights and those of American States, a co-appellee. *Id.; see also Sheldon L. Pollack Corp. v. Falcon Ind., Inc.,* 794 S.W.2d 380, 384–85 (Tex.App.—Corpus Christi 1990, writ denied); *Southwestern Bell Tel. Co. v. Aston,* 737 S.W.2d 130, 131 (Tex.App.—San Antonio 1987, no writ). Here, Peck did not raise any cross-points or perfect an appeal challenging the trial court's judgment as it pertained to her and American States. Hence, any error concerning that portion of the judgment is waived. Consequently, the primary question preserved for this Court's review is whether the trial court erred in declaring that State Farm has a duty to defend Peck under the auto policy. Point one is overruled.

By its second and third points of error, State Farm contends the trial court erred in rendering judgment that it had a duty to defend Peck under the auto policy. We agree.

■ In essence, Peck claims the term "auto accident" is ambiguous and asserts that "[i]f a contract of insurance is susceptible to more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured." We acknowledge that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage. *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984); *Ramsay v. Maryland Am. General Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976). Nevertheless, this rule only applies when the language in the policy is ambiguous. *Puckett,* 678 S.W.2d at 938; *Ranger Ins. Co. v. Bowie,* 574 S.W.2d 540, 542 (Tex.1978); *Transport Insurance Co. v. Standard Oil Co. of Texas,* 161 Tex. 93, 337 S.W.2d 284, 288 (1960). Conversely, unambiguous terms

used in an insurance contract are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *Security Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979). In this instance, neither party claims the term is used in a "technical or different sense."

Disagreement over the interpretation of an instrument does not automatically make the instrument ambiguous. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 727 (Tex.1981). Whether an insurance policy is ambiguous is a question of law for the court to decide. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id.* at 393. However, if the policy is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *Id.*

Here, the liability coverage section of the auto policy provides that State Farm will assume the responsibility to pay for damages arising out of an "auto accident." The term "auto accident" is not defined in the policy. Although each party offers its own interpretation of the words "auto accident," we conclude that the term is plain and unambiguous as a matter of law. Thus, we must apply its ordinary and generally accepted meaning.

Because we have found no Texas cases defining the term "auto accident," we turn to cases from other jurisdictions for persuasive assistance. We are persuaded that the ordinary and generally accepted meaning of the term "auto accident" refers to situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person. *See Farmers Ins. Co. of Washington v. Grelis,* 43 Wash.App. 475, 718 P.2d 812, 813 (1986). Furthermore, we are persuaded that the automobile must, in some manner, be involved in the accident. *Jordan v. United Equitable Life Insurance Company,* 486 S.W.2d 664, 667 (Mo.Ct.App.1972). The mere fact that an accident takes place in or near an automobile does not mean the accident was an "auto accident." *Id.* In that regard, we agree

with the language used in *Farmers Ins. Co. of Washington v. Grelis, supra.*

In *Grelis,* the owner of a van parked his vehicle to wait for a friend. While the van was parked, a stranger knocked on the window and asked for a ride. Grelis, the van owner, allowed the stranger to enter the van. After the two men talked for a while, Grelis went to the back of the van. Soon thereafter, the stranger pulled a knife on Grelis and demanded money. Grelis gave the man some money. Grelis claimed that during the robbery, the stranger tripped on a part of the front seat of the van, which caused him to lunge forward and stab Grelis. In determining the meaning of the term "automobile accident" contained in a personal injury protection provision of an automobile insurance policy covering the van, the court stated:

> *It would require a strained interpretation of the words to find an ambiguity.* In our judgment, the average person would not consider the stabbing incident in Grelis's parked van as an "automobile accident." Rather, we believe the average person would probably say only that Grelis was stabbed while sitting in his automobile. (Emphasis added.)

*Farmers Ins. Co. of Washington v. Grelis,* 718 P.2d at 813.

Here, the stipulated facts do not indicate that Peck was involved in a collision or near collision. Further, the only nexus between the accident and the vehicle was the fact that Salazar was sitting in the vehicle when he got bit. Like the court in *Grelis,* we think the average person would not consider the biting incident in Peck's vehicle an "auto accident." Instead, we conclude that the average person would merely say Salazar was bit by a dog while sitting in Peck's vehicle. Consequently, State Farm was not obligated to defend Peck under the terms of the auto policy. Points two and three are sustained.

Accordingly, that portion of the judgment declaring that "American Economy Insurance Company (incorrectly named herein as American States Insurance Company) has no duties, including no duty to defend, to Defendant Emma S. Peck under its homeowner's insurance Policy No. HE–42–074030–4, and

under Texas law in connection with the litigation styled, 'Norma Irene Lopez, Individually and as Next Friend of Isaiah Jacob Salazar, A Minor v. Emma Peck,' Cause No. 91–09–14729 presently pending in the 286th Judicial District Court of Hockley County, Texas" is affirmed.

All other portions of the judgment are hereby reversed, and judgment is hereby rendered that State Farm has no duty to defend Peck in cause number 91–09–14729 of the 286th Judicial District Court of Hockley County, Texas, and that Peck take nothing on her claim for attorney's fees against State Farm, and that American States take nothing on its claim for attorney's fees against State Farm, and that State Farm recover from American States $10,000 in reasonable and necessary attorney's fees as stipulated by the parties.

Costs are adjudged against the named appellees.

*ON MOTION FOR REHEARING*

In her sole point on motion for rehearing, Emma S. Peck contends this Court erred in rendering a take nothing judgment against her with regard to her claim for attorney's fees because the parties stipulated that she should recover such fees from either State Farm Mutual Insurance Company ("State Farm") or American States Insurance Company ("American States"). We disagree.

In our original opinion issued May 30, 1995, we concluded that State Farm had "no duty to defend Peck in cause number 91–09–14729 of the 286th Judicial District Court of Hockley County, Texas." We also concluded that Peck should "take nothing on her claim for attorney's fees against State Farm." Peck challenges this determination and asserts that her claim for attorney's fees should be remanded to the trial court for further consideration because the parties stipulated that she should recover attorney's fees in the amount of $4,500.

The stipulation concerning Peck's entitlement to attorney's fees provides:

Emma Peck has incurred the sum of $4,500 in reasonable and necessary attor-

ney's fees, and is entitled to recover said amount *in the event that it [sic] prevails in this cause.* (Emphasis added).

Under this stipulation, Peck is entitled to recover attorney's fees only if she prevails in the lawsuit.

The record, however, shows that Peck has not prevailed in this cause. The trial court determined, adversely to her, that American States had no duty to defend her under its homeowners policy. Peck did not raise any cross-points or perfect an appeal from that determination. Hence, that portion of the trial court's judgment became final.

On appeal, this Court determined that State Farm did not have a duty to defend Peck under its automobile insurance policy. Peck does not challenge this determination in her motion. To the contrary, she states that she "has no argument with nor takes issue with the decision of the court of appeals that State Farm has no duty to defend the Salazar case." Consequently, since Peck has not prevailed in this cause, having had all issues decided against her, she is not entitled to recover the stipulated amount of attorney's fees. Peck's sole point of error on rehearing is overruled.

Accordingly, Peck's motion for rehearing is overruled.