# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 2, 2019

Lyle W. Cayce
Clerk

No. 18-50536

RICHARD BRETT FREDERKING,

>    Plaintiff - Appellant

v.

CINCINNATI INSURANCE COMPANY,

>    Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JONES, HO, and OLDHAM, Circuit Judges.

JAMES C. HO, Circuit Judge:

Only an insurance company could come up with the policy interpretation advanced here. Cincinnati Insurance Company theorizes that its automobile policies do not cover injuries caused by drunk driving collisions, because such collisions are not "accidents." Its logic is this: intentional acts are not accidents, and drunk drivers make the intentional choice to drink and then drive.

This theory of interpretation conflicts with the plain meaning and common usage of the word "accident"—and defies the understanding and expectation of everyone who drives a car. Not surprisingly, no court has, to our knowledge, endorsed the policy interpretation advanced here, and Cincinnati

No. 18-50536

cites none (other than the district court in this case). We reverse and remand for further proceedings.

## I.

Carlos Xavier Sanchez was driving under the influence of alcohol when he failed to yield the right of way, thereby colliding with another car and injuring Richard Brett Frederking. At the time, Sanchez was driving a truck assigned to him by his employer, Advantage Plumbing Services. Advantage, in turn, is insured by Cincinnati.

Frederking sued both Sanchez and Advantage in Texas state court. The jury found that Sanchez's conduct was grossly negligent, and that Advantage negligently entrusted Sanchez with the vehicle. The jury held Sanchez and Advantage jointly and severally liable for $137,025 in compensatory damages. It further awarded $207,550 in exemplary damages for Sanchez's gross negligence.

As Advantage's insurer, Cincinnati agreed to pay Frederking the amount of the compensatory damages award, thereby discharging Advantage's liability. But when Frederking demanded that Cincinnati also pay Sanchez's exemplary damages, Cincinnati refused. In response, Frederking brought this suit against Cincinnati.

Frederking is a third-party beneficiary of Advantage's insurance policies with Cincinnati. Those policies have two relevant coverage sections. First, the Auto Policy covers damages resulting from "accidents" caused by Advantage's employees that produce defined injuries. Second, the Commercial Umbrella Liability Coverage applies where the Auto Policy does not. It also covers sums in excess of the Auto Policy's limits. For our purposes, however, its coverage is essentially identical to the Auto Policy, because it covers "occurrences"—which includes (but is not limited to) "accidents" resulting in defined injuries.

2

No. 18-50536

When Cincinnati refused to pay the exemplary damages award, Frederking brought this suit for breach of contract and declaratory judgment in Texas state court. Cincinnati removed to federal court and counterclaimed for declaratory judgment. Cincinnati then moved for summary judgment on various grounds, namely, that (1) Sanchez was not a covered "insured" at the time of the collision; (2) Sanchez's grossly negligent conduct could not result in a covered "accident"; (3) the exemplary damages award is uninsurable as a matter of contract and public policy; and (4) Cincinnati has no duty to indemnify Sanchez. Frederking cross-moved for partial summary judgment on the declaratory judgment claims and argued that a fact issue remained about whether Sanchez was an "insured."

The district court granted summary judgment to Cincinnati. In particular, it concluded that Sanchez's intentional decision to drive while intoxicated meant that the collision was not an "accident" under Texas law.

## II.

"An interpretation of an insurance policy provision is an issue of law reviewed *de novo*." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (per curiam) (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998)).

Both of the policies at issue here cover damages resulting from "accidents." Neither policy defines the term "accidents."[1] So we are left to give this undefined term its "generally accepted or commonly understood meaning." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007) (citing *W. Reserve Life Ins. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953)).

---

[1] The policy simply says that the term "includes continuous or repeated exposure to the same conditions resulting in" injury. This appears to be common policy language. *See, e.g., Fed. Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 122 (5th Cir. 2005) (same); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 6 (Tex. 2007) (same).

No. 18-50536

For the reasons explained below, we conclude that, as a matter of plain meaning and common usage, the term "accident" plainly includes the drunk driving collision that gave rise to this dispute.

A.

Consistent with ordinary usage, the Supreme Court of Texas has defined the term "accident" as a "fortuitous, unexpected, and unintended event." *Id.* (citing 1A JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 360 at 449 (1981)). *See also* BRYAN A. GARNER, GARNER'S DICTION- ARY OF LEGAL USAGE 12 (3d ed., 2011) ("[Accident, mishap, casualty, and (sometimes) incident] denote a chance event that brings injury or loss. *Acci- dent*, the broadest term, refers to an unforeseen event involving an injury or loss that ranges from slight (e.g., spilling a drop from a tepid cup of water) to grave (e.g., running a cruise ship into an iceberg). . . . In the context of insur- ance, . . . *accident insurance* covers injuries to oneself by some lack of care or inattention, or perhaps by some occurrence wholly outside one's control."); *Ac- cident*, BLACK'S LAW DICTIONARY 16 (9th ed., 2009) ("An unintended and un- foreseeable injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated.").

Put another way, the term "accident" is defined by what it excludes— intentional acts. *See, e.g.*, *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex. 1973) ("An intentional tort is neither an 'accident' nor 'occurrence' within the terms of the policy.").

Not surprisingly, then, we ordinarily describe automobile collisions as "accidents" in common parlance. As the Texas Supreme Court has stated, "[t]he term 'auto accident' refers to situations where one or more vehicles are involved with another vehicle, object, or person." *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997) (per curiam) (quoting *State Farm Mut. Ins. Co. v. Peck*, 900 S.W.2d 910, 913 (Tex. App.—Amarillo 1995,

no writ)). *See also Peck*, 900 S.W.2d at 913 ("[T]he ordinary and generally accepted meaning of the term 'auto accident' refers to situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person.") (citation omitted).

There is no reason to describe the automobile collision in this case as anything other than an "accident."  Certainly no one contends that Sanchez intended his vehicle to collide with Frederking's vehicle.  Nor does anyone suggest that Sanchez drank in hopes of causing an automobile collision.  Accordingly, we conclude that this case falls well within the common understanding of the term "accident."

## B.

Cincinnati contends otherwise.  It argues that drunk driving collisions are not "accidents," because the decision to drink (and then later drive) was intentional—even though there was admittedly no intent to collide with another vehicle.  As Cincinnati points out, a jury found that Sanchez intentionally decided to drive while intoxicated, with "actual, subjective awareness" of the "extreme degree of risk, considering the probability and magnitude of the potential harm to others."  TEX. CIV. PRAC. & REM. CODE § 41.001(11) (defining the standard for gross negligence).  As a result, Sanchez's subjective awareness of the risk he posed renders the collision intentional, rather than accidental.

There are a number of problems with this theory.  To begin with, it is contrary to common parlance.  To illustrate:  During oral argument, counsel for Cincinnati acknowledged that, under its understanding of the term "accident," the phrase "drunk driving accident" would have to be an oxymoron.  But it is not.  Far from it, "drunk driving accident" is a matter of common usage.

Consistent usage, as reflected in numerous judicial opinions, can be an authoritative source of common parlance.  As the Supreme Court recently observed, "[w]hat the dictionaries suggest, legal authorities confirm." *New Prime*

*Inc. v. Oliveira*, 139 S. Ct. 532, 540 (2019) (surveying judicial opinions for evidence of semantic meaning). And decades of legal authorities consistently refer to drunk driving collisions as "accidents." *See*, *e.g.*, *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 655 (2016) ("In December 2008, a drunk driver ran through a stop sign and crashed into Montanile's vehicle. The accident severely injured Montanile."); *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1271 n.57 (5th Cir. 1985) ("At the time of the accident, the car was being driven by a highly intoxicated driver at speeds in excess of 100 m.p.h."); *Hernandez v. State*, 556 S.W.3d 308, 331 n.4 (Tex. Crim. App. 2017) ("[W]e held that there was a multiple-punishment violation where Bigon had been convicted of intoxication manslaughter, manslaughter, and felony murder after a car accident."); *Employees Ret. Sys. of Texas v. Duenez*, 288 S.W.3d 905, 912 (Tex. 2009) (Hecht, J., dissenting) ("The plan paid for health care for Duenez's daughter Ashley, who along with her parents and siblings was injured in a car accident with a drunk driver."); *Smith v. Sewell*, 858 S.W.2d 350, 351 (Tex. 1993) ("[Plaintiff] became intoxicated at . . . a bar . . . [and on] his way home, [] lost control of his car and was severely injured in the resulting one-car accident."); *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 82–83 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("The governmental unit and the engineering firm were sued for failing to design proper signage that, the plaintiffs claimed, would have prevented a drunk driver from entering an exit ramp and causing a car accident."); *Biaggi v. Patrizio Rest. Inc.*, 149 S.W.3d 300, 303 (Tex. App.—Dallas 2004, pet. denied) ("[Plaintiff] herself had been in car accidents she caused when she was impaired by drug usage."); *Venetoulias v. O'Brien*, 909 S.W.2d 236, 239 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd by agr.) ("O'Brien was injured in a one car accident while she was intoxicated.").

No. 18-50536

Given the choice between the common usage practiced by federal and state courts across the country, and the idiosyncratic usage urged by counsel here, our decision is easy.

Moreover, under Cincinnati's theory of interpretation, it is not just drunk driving collisions that would be excluded from coverage. As counsel acknowledged during oral argument, a collision caused by texting while driving would also not be an accident. A collision caused by eating while driving would not be an accident. And a collision caused by doing makeup while driving would not be an accident. In each of these scenarios, after all, a driver has made an intentional decision that contributes to an accident.

But this is implausible on its face. Indeed, it would defeat the widely held expectations of the countless insureds who purchase automobile insurance precisely to protect against these kinds of "accidents."

In sum, we have no difficulty concluding that drunk driving collisions are indeed "accidents," as a matter of common parlance as well as proper policy interpretation.

C.

Nor do we accept Cincinnati's suggestion that Texas Supreme Court precedent commands a different result.

Cincinnati points out that, under Texas Supreme Court precedent, a collision is not an "accident" if the collision is "'highly probable' because it was 'the natural and expected result of the insured's actions.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Puget Plastics Corp.*, 532 F.3d 398, 402 (5th Cir. 2008) (quoting *Lamar Homes*, 242 S.W.3d at 9). *See also Lamar Homes*, 242 S.W.3d at 9 ("[A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) *or circumstances confirm that the resulting damage*

7

*was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not.*") (emphasis added).

But the collision here was neither "highly probable" nor the "natural and expected" result of Sanchez's intoxicated driving. "Probable" means "more likely than not." *Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 47 (Tex. 1969). Likewise, for something to be "natural and expected," it must be so obviously foreseeable that courts may conclude that the tortfeasor *intended* it to happen. *See Lamar Homes*, 242 S.W.3d at 9. As dangerous as drunk driving is, it does not make collisions "more likely than not"—or the "expected" result of intoxicated driving.

In addition, the Texas Supreme Court has rejected the notion, floated by Cincinnati here, that "if an actor intended to engage in the conduct that gave rise to the injury, there can be no 'accident.'" *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997). Likewise, the Texas Supreme Court has rejected the suggestion that mere foreseeability is sufficient to establish intentional conduct. *See Lamar Homes*, 242 S.W.3d at 8 ("[We] did not adopt foreseeability as the boundary between accidental and intentional conduct. Insurance is typically priced and purchased on the basis of foreseeable risks, and reading [precedent] as the carrier urges would undermine the basis for most insurance coverage.").

In sum, nothing in Texas law requires us to construe the term "accident" in a manner contrary to its plain and widely held meaning.

\* \* \*

We reverse the grant of summary judgment and remand for further consideration.[2]

---

[2] Cincinnati raises two alternative grounds for granting summary judgment. First, it argues that Sanchez was not an "insured" under the policies at the time of accident because of his conduct. Second, it asserts that the "general public policies of Texas" preclude coverage

No. 18-50536

---

of Sanchez's exemplary damages. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 655 (Tex. 2008).  The district court did not reach these issues.  We decline to address them for the first time on appeal.