**Opinion issued December 31, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00731-CV**

———————————

**SUZANNE SONDRUP RON, Appellant**

**V.**

**AVISHAI RON, INDIVIDUALLY AND AS TRUSTEE OF THE SUZANNE AND AVI RON 2012 CHILDREN'S TRUST, Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-41539**

---

**MEMORANDUM OPINION**

Suzanne Ron appeals the trial court's order confirming an arbitration award for her former spouse Avishai ("Avi") Ron, individually and in his capacity as trustee of a trust formed during their marriage to benefit their children. On appeal, Suzanne contends the arbitration award must be vacated or modified because the

arbitrator exceeded his authority, and Avi contends we lack jurisdiction to decide Suzanne's appeal under the standing and mootness doctrines. Concluding that we have jurisdiction and finding no error, we affirm the trial court's order.

**Background**

Avi and Suzanne Ron married in 1994 and had three children. Suzanne filed for divorce in 2014, and the parties have been mired in litigation for much of the time since. Much of the litigation concerned two reciprocal trusts Avi and Suzanne formed in 2012 as part of their pre-divorce estate and tax planning: (1) the Suzanne Ron 2012 Family Trust ("Family Trust") and (2) the Avishai and Suzanne Ron 2012 Children's Trust ("Children's Trust"). Relevant here, under the original terms of the Children's Trust, Suzanne was the settlor, Avi was the trustee, the couple's three children were the beneficiaries, and Gary Stein was named trust protector. As trust protector, Stein could add and remove trustees and beneficiaries and was immune from liability for certain actions related to the trust.

Avi and Suzanne's divorce was finalized in 2017, when the family court entered a decree purporting to divide their community property. Because some valuable business interests could not be assigned in the divorce decree, the family court ordered Avi to pay Suzanne a $19 million equalization judgment. Avi appealed the divorce decree ("Divorce Suit Appeal").

Around the same time, Suzanne, individually and on behalf of the Family Trust, sued Avi for allegedly stealing money from entities that he managed but were owned, in part, by Suzanne or the Family Trust ("Family Trust Suit").

Trying to resolve all their disputes, Avi and Suzanne mediated with Alan Levin on October 17, 2017. When the mediation ended, they executed a confidential Mediated Settlement Agreement ("MSA"). In the MSA, Avi and Suzanne (1) released their claims against each other as of the date of the MSA,[1] and (2) agreed to "submit any dispute related to [the MSA] to . . . Levin for binding arbitration." The MSA was signed by Suzanne, Avi, and their counsel. It was not signed by anyone as trustee of either the Children's Trust or the Family Trust. And Stein did not participate in the mediation or sign the MSA.

In 2018, Avi and Suzanne disagreed about their obligations under the MSA. Avi obtained an order compelling arbitration before Levin. While that arbitration was pending,[2] Suzanne filed a new lawsuit in federal district court against Avi,

---

[1]     The release provides: "All lawsuits, including the [Divorce Suit Appeal] and the [Family Trust Suit] will be mutually dismissed with prejudice and the parties to this agreement shall jointly release each other from any and all claims through the date thereof."

[2]     This initial arbitration resulted in a final arbitration award on Suzanne's interest in the Family Trust and entitlement to other compensation from Avi. The Fourteenth Court of Appeals affirmed the arbitration award. *See Ron v. Ron*, No. 14-20-00776-CV, 2022 WL 3365266 (Tex. App.—Houston [14th Dist.] Aug. 16, 2022, pet. denied) (mem. op.).

3

individually and as trustee of the Children's Trust ("Federal Suit"). Suzanne alleged that Avi had fraudulently transferred community assets to the Children's Trust during the divorce suit. She also named Stein as a defendant and alleged that, as trust protector, he helped Avi complete the fraudulent transfers by naming Avi as a beneficiary of the Children's Trust. Suzanne pleaded two claims against Avi: conversion and violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA"). And she pleaded three claims against Stein: civil conspiracy based on conversion, civil conspiracy to violate TUFTA, and breach of fiduciary duty.

Stein moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. And Avi moved to compel arbitration of Suzanne's remaining claims against him under the MSA. The federal district court granted both motions, and the federal appeals court affirmed.[3] In affirming the district court's decision compelling arbitration, the federal appeals court concluded that Suzanne's claims about the Children's Trust fell within the MSA's "extremely broad" arbitration clause because she "repeatedly referenced the MSA" in her allegations about the Children's Trust and claimed that she was Avi's creditor under the MSA and that he made the transfers to defraud her.[4]

---

[3]     *See Ron v. Ron*, 836 F. App'x 192 (5th Cir. 2020).

[4]     *Id.* at 197.

After being compelled to arbitration, Avi asserted counterclaims alleging that Suzanne had breached the MSA by filing the Federal Suit.[5] He asked for three categories of damages: (1) his legal fees for compelling arbitration as damages for breach of the MSA's arbitration provision; (2) his legal fees for defending against Suzanne's released claims as damages for breach of the MSA's release provision; and (3) damages equal to Stein's fees in the federal district and appeals courts.

In support of his request for damages equal to Stein's fees, Avi cited the Children's Trust's obligation in the trust documents to indemnify the trust protector for certain expenses:

> Any Trust Protector is entitled to reimbursement from the trust estate for any and all expenses, including, but not limited to, reimbursement for attorneys' fees and costs of litigation, reasonably incurred to defend any claim brought against the Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith, even if the cost of the Trust Protector's defense would exhaust the value of the trust.

Avi asserted that when Suzanne sued Stein in federal district court, she caused the Children's Trust to incur damages under this provision equal to the amount of Stein's fees. And thus, Stein's fees were "damages to the Children's Trust (and thus recoverable by [him] in his capacity as trustee of the Children's Trust)."

---

[5] Avi also sought a declaration that Suzanne was not his creditor, which the arbitrator granted in the final arbitration award.

Avi moved for summary judgment on his counterclaims, and the arbitrator granted the motion in part. The arbitrator ruled:

- the MSA released "any and all claims through October 17, 2017 [the MSA effective date] between Avi and Suzanne, in all of their respective actual capacities";

- the MSA did not release claims that accrued after October 17, 2017;

- Suzanne breached the MSA by refusing to timely arbitrate her claims;

- Suzanne breached the MSA by bringing released claims against Avi;

- Avi was not entitled to summary judgment on his claim that Suzanne breached the MSA by bringing claims against him as trustee of the Children's Trust because he did not show those claims were released; and

- damages would be decided at the arbitration hearing.

After the summary judgment ruling, Suzanne voluntarily dismissed her affirmative claims. Thus, the issues for the final hearing were Avi's claim to recover both his own and Stein's attorney's fees as alleged damages and Suzanne's claim for attorney's fees. The parties stipulated some facts, including that while Stein had incurred attorney's fees in obtaining dismissal of the claims against him in the Federal Suit, neither Avi nor the Children's Trust had paid any of Stein's fees.

The parties put forward their evidence and argument at the final hearing, and the arbitrator issued his final award. The arbitrator awarded Avi all the damages he requested—$104,936.48—for his own fees for compelling arbitration and defending against released claims. As for Stein's attorney's fees, the arbitrator found that the

6

Children's Trust had "a contractual duty to indemnify" Stein as trust protector and that Stein was "entitled to indemnification" for the Federal Suit. The arbitrator ordered Avi, as trustee, to pay $334,164.29 into his counsel's IOLTA account, to be paid to Stein. The arbitrator ordered Suzanne to "reimburse" the Children's Trust for its payment of Stein's fees no later than 20 days after receiving written notice from Avi's attorney of full payment from the Children's Trust.

After the arbitration hearing, Avi's counsel wrote to Suzanne's counsel that Avi had "previously advanced" $140,000 to Stein. And later, after Avi transferred the rest of the amount specified in the arbitration award to the IOLTA account, Avi's counsel sent a letter to Suzanne's counsel and the arbitrator:

> Please be advised that today my firm received a wire transfer from Avi[] Ron, as Trustee of the Suzanne and Avi Ron 2012 Children's Trust, in the amount of $194,164.29. Per the Arbitrator's Final Award, this amount represents the legal fees and costs awarded to Gary Stein of $334,164.29 less the $140,000.00 that was previously advanced to Mr. Stein by Mr. Ron on behalf of the Trust. The funds have been deposited into [the law firm's] IOLTA account for distribution to Mr. Stein.

Avi moved to confirm the arbitration award in the trial court. Suzanne filed a competing motion to vacate, modify, or correct the arbitration award under the Texas Arbitration Act ("TAA"). Suzanne argued that the arbitrator exceeded his power, and ruled on a matter not before him, by awarding Stein damages (which, ultimately, Suzanne would pay) because (1) Stein was not a party to the MSA; (2) Suzanne never agreed to arbitrate any claim Stein might have against her, Avi, or the

7

Children's Trust; (3) Stein was not a party to and never made a claim in the arbitration; and (4) the arbitration award manufactured damages that did not exist at the final hearing because the Children's Trust had not yet reimbursed Stein's fees.

After a hearing on the motions, the trial court confirmed the entire award. Suzanne appealed, complaining of the portion of the arbitration award that requires her to reimburse the Children's Trust for its payment of Stein's fees.

## Justiciability

Avi argues that Suzanne's appeal must be dismissed for lack of jurisdiction because no justiciable issues exist. He asserts: (1) Suzanne lacks standing to complain about his obligation under the arbitration award to pay Stein, and (2) any dispute over his obligation is moot because he voluntarily paid Stein and thus satisfied the arbitration award.

We must examine our jurisdiction any time it is in doubt. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020). Issues of justiciability, such as standing and mootness, implicate a court's subject matter jurisdiction. *See Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998). These justiciability doctrines stem from the prohibition against advisory opinions. *Id.* When no live controversy exists between the parties, an opinion is advisory because it does not remedy any actual or imminent harm and addresses only a hypothetical injury. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440,

440 (Tex. 1993). A controversy must exist between the parties "from the first filing through the final judgment," including any appeal. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 147–48 (Tex. 2012). If a controversy ceases while a case is on appeal, the case is moot, and the appellate court lacks subject matter jurisdiction to act. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2000).

The standing and mootness doctrines relate to whether an appropriate party has sued at an appropriate time so that there is an actual, live controversy between the parties. Standing concerns *who* may bring an action. *Patterson*, 971 S.W.2d at 442. "Just as plaintiffs must have standing to bring suit, appellants must have standing to appeal trial court judgments." *Nephrology Leaders & Assocs. v. Am. Renal Assocs. LLC*, 573 S.W.3d 912, 914 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015) (courts lack subject matter jurisdiction to determine appeal brought by an "improper party" who lacks "appellate standing"). To have standing, an appellant must be personally aggrieved, meaning her alleged injury "must be concrete and particularized, actual or imminent, not hypothetical." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013); *see also McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 234 (Tex. 2001) ("[S]tanding requires that the controversy adversely affect the party seeking review."). And her injury must be "likely to be redressed by the requested relief." *Heckman*, 369 S.W.3d at 154. "[A]n appealing party may not complain of errors that

do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000).

Mootness occurs when what was once a live controversy between the parties ends. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010); *Williams*, 52 S.W.3d at 184. "Usually, when a judgment debtor voluntarily pays and satisfies a judgment rendered against him, the cause becomes moot." *Riner v. Briargrove Park Prop. Owners, Inc.*, 858 S.W.2d 370, 370 (Tex. 1993) (per curiam). This rule prevents "a party who voluntarily pays a judgment from later changing his mind and seeking the court's aid in recovering payment." *Id.* But if a party does not voluntarily pay a judgment, his appeal is not moot. *Id.*

## A.    Standing

Avi argues that Suzanne lacks standing to complain about the part of the arbitration award authorizing reimbursement of Stein's attorney's fees because the award—and the trial court's order confirming it—"did not obligate Suzanne to pay anything to Stein." Instead, Avi says, the arbitration award "obligated [him] to pay Stein as a condition precedent to recovering certain damages." Thus, "[i]f anyone was aggrieved by the need to pay a non-party, it was Avi alone."

In support, Avi cites *State Farm Mutual Insurance Co. v. Peck*, 900 S.W.2d 910 (Tex. App.—Amarillo 1995, no writ), a dog bite case. The dog's owner was driving the dog to the groomer in her car when the dog bit a passenger sitting in the

backseat with the dog. *Id.* at 912. The passenger sued, and the driver made a claim on her automobile and homeowner's insurance policies. *Id.* The automobile insurance carrier (State Farm) sought a declaration that it had no duty to defend and joined the homeowner's insurance carrier (American States) as a party. *Id.* The trial court concluded that State Farm had a duty to defend, but American States did not. *Id.* Only State Farm appealed, challenging the declaration that American States had no duty to defend. *Id.*

The appellate court concluded that the judgment declaring American States had no duty to defend did not affect the rights or obligations of State Farm. *Id.* Instead, any error related to American States' duty to defend "was a matter for [the dog owner] to challenge on appeal [because] that portion of the judgment was adverse to her and involved only her rights and those of American States[.]" *Id.* Consequently, State Farm lacked standing to challenge the declaration that American States had no duty to defend. *Id.*

*Peck* is distinguishable because, unlike State Farm, Suzanne is complaining about her own obligation under the arbitration award and the trial court's order confirming it. The arbitration award sets out a multi-step process for damages. First, in paragraph G, the arbitration award orders Avi, as trustee, to pay $334,164.29 into his attorney's IOLTA account, to be paid to Stein:

> G. The [Children's] Trust had, and continues to have, a contractual duty
> to indemnify its Trust Protector [Stein] . . . during the entire period in

11

which he served in that capacity. More specifically, Stein, as Trust Protector of the Trust, is entitled to indemnification as to Suzanne's [Federal Suit] against him. The Trust, through its current Trustee, is therefore ORDERED, by not later than twenty (20) days from the date of execution below, to reimburse Stein a total of $334,164.29. . . . This amount represents the actual legal fees and costs incurred by Stein in defense of Suzanne's [Federal Suit] targeting his conduct as Trust Protector. The said funds hereby awarded, less any amounts previously advanced to Stein by Avi on behalf of the Trust, shall be deposited into the MNB IOLTA account for appropriate and prompt distribution to Stein. [Avi's counsel] shall be responsible to immediately notify Suzanne's counsel, in writing, upon receipt of the foregoing payment in full from the Trust.

Then, in paragraph H, the arbitration award orders Suzanne to "reimburse"

the Trust the same amount as Stein's fees.

H. The Arbitrator additionally ORDERS that Suzanne shall, by not later than twenty (20) days after such written notification from [Avi's counsel], reimburse the Trust the full $334,164.29 being the same amount as the Trust and/or Avi actually paid, in one or more tranches, to reimburse Stein. These funds shall be deposited into the MNB IOLTA account for [Avi's counsel's] appropriate and prompt distribution to the Trust.

The trial court's order confirming the arbitration award enters judgment against Suzanne for the same amount, expressly referencing paragraph H. Consequently, Suzanne's appeal challenging the personal liability imposed on her by the arbitrator, as confirmed by the trial court, is an appeal from a "judgment . . . adverse to her." *Peck*, 900 S.W.2d at 912. We hold Suzanne has been "injuriously affect[ed]" by the judgment and therefore has standing on appeal. *Torrington*, 46 S.W.3d at 844.

**B.     Mootness**

Avi contends Suzanne's appeal is moot because he satisfied his obligation, as trustee, to pay the amount of Stein's fees into the IOLTA account. According to Avi, his "voluntary payment moots any challenge to [*his*] obligation to pay non-party Stein[.]" While Avi may be correct that any challenge to his obligation as trustee to reimburse Stein's attorney's fees was mooted by his voluntary payment, *see Riner*, 858 S.W.2d at 370, he ignores the second part of the arbitration award obligating Suzanne to pay. The trial court's order confirming the arbitration award makes Suzanne a judgment debtor for that amount, which she has not paid and now challenges. We hold that because there has been no voluntary payment of Suzanne's obligation under the judgment, her appeal is not moot. *See id.*

## Confirmation of Arbitration Award

In her sole issue, Suzanne argues that the arbitration award must be vacated, modified, or corrected because "the arbitrator (1) exceeded his power and the scope of his authority and (2) ruled on a matter not submitted to him when he awarded attorney's fees to be paid to an individual [Stein] who was not a party to the arbitration agreement and who did not appear, make a claim, or participate in the arbitration proceedings."

## A. Standard of review and applicable law

We review de novo a trial court's decision to confirm or vacate an arbitration award. *Port Arthur Steam Energy LP v. Oxbow Calcining LLC*, 416 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Review of an arbitration award is "extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). We give an arbitration award great deference and indulge every reasonable presumption in favor of the award and none against it. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002).

Suzanne moved to vacate, modify, or correct the arbitration award under the Texas Arbitration Act ("TAA"). *See* TEX. CIV. PRAC. & REM. CODE § 171.001–.098. The TAA requires a court, on a party's application, to confirm an arbitration award "[u]nless grounds are offered for vacating, modifying, or correcting [the] award under Section 171.088 or 171.091." TEX. CIV. PRAC. & REM. CODE § 171.087; *see Hamm v. Millenium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[C]onfirmation [of an arbitration award] is the default result unless a challenge to the award has been or is being considered."). Under Section 171.088, courts must vacate an arbitration award if the arbitrator exceeded his powers. *See* TEX. CIV. PRAC. & REM. CODE § 171.088(a)(3)(A). And under Section 171.091, an arbitration award must be modified or corrected if the arbitrator "made an award with respect to a matter not submitted to [him] and the

14

award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted." *Id.* § 171.091(a)(2).

In arbitration compelled by contract, "[a]n arbitrator derives his power from the parties' agreement to submit to arbitration." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 89–91 (Tex. 2011). As with any other contract, the parties' intentions control, and courts must give effect to the parties' contractual rights and expectations. *Id.* An arbitrator thus exceeds his authority when he disregards the contract and dispenses his own idea of justice. *See Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 104 (Tex. App.—Houston [1st Dist.] 2013, no pet.). But not when he simply misinterprets the contract or misapplies the law. *See D.R Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 830 (Tex. App.—Dallas 2009, no pet.) ("[I]mprovident, even silly interpretations by arbitrators usually survive judicial challenges." (quotation omitted)). That is, "an arbitrator does not exceed [his] authority by committing a mistake of law, but instead by deciding a matter not properly before [him]." *LeFoumba v. Legend Classic Homes, Ltd.*, No. 14-08-00243-CV, 2009 WL 3109875, at *3 (Tex. App.—Houston [14th Dist.] Sept. 17, 2009, no pet.) (mem. op.). "[T]he proper inquiry is not whether the arbitrator decided an issue correctly,

15

but rather, whether he had the authority to decide the issue at all." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017).

**B.      The arbitrator acted within his authority on matters submitted to him**

Suzanne frames the arbitrator's award as deciding an unasserted claim (for indemnity) by someone who was neither a party to nor third-party beneficiary of the MSA (Stein) or its arbitration provision. Based on this framing, she makes the same argument for vacatur and modification or correction of the arbitration award. That is, she seeks both remedies based on the same claimed error. She asserts that when the arbitrator "decide[d] an issue not submitted to him," and "award[ed] damages to a party not before him, with whom the arbitration parties did not agree to arbitrate," the arbitrator both exceeded his authority and made an award on a matter not submitted to him, making both remedies appropriate. Avi responds that Stein's nonparticipation and nonparty status is not a basis for vacating, modifying, or correcting the arbitration award because the damages Suzanne complains about were properly awarded to Avi in his capacity as trustee of the Children's Trust, and not to Stein. We agree with Avi.

We acknowledge that several facts underlying Suzanne's argument are undisputed. For instance, it is undisputed that Stein was not a party to the MSA or its arbitration provision, that he did not appear in the arbitration proceeding, and that

16

he did not make a claim for reimbursement of his attorney's fees from the Federal Suit. But those facts are not controlling.

The underlying arbitration was ordered by the Fifth Circuit in the Federal Suit filed by Suzanne against Stein and Avi, in both his individual capacity and representative capacity as trustee of the Children's Trust. In the Federal Suit, Suzanne named Stein and Avi as defendants, with Avi being named in *both* his individual capacity and representative capacity as trustee of the Children's Trust. *Ron*, 836 F. App'x at 197. She alleged that "Avi caused assets in which [she] and [he] held community interests to be transferred to the [Children's] Trust," totaling about $1.3 million. *Id.* And although she argued that her claims related to the Children's Trust fell outside the scope of the MSA's arbitration provision, the Fifth Circuit disagreed and affirmed the district court's order compelling arbitration of all claims against Avi, individually and as trustee. *Id.* In support of its holding, the Fifth Circuit observed that the MSA contains "an extremely broad arbitration clause" and that Suzanne's allegations against Avi relating to the Children's Trust "repeatedly referenced the MSA" and thus "squarely implicate[d] the terms of the MSA."[6] *Id.*

---

[6]  The court gave two examples: (1) "in her amended complaint under the Children's Trust, Suzanne specifically alleged that the MSA was the result of Avi's fraud and breach of fiduciary duties," and (2) she also claimed that she was Avi's creditor under the MSA because of the payment schedule for satisfying the equalization judgment and that his alleged fraudulent transfer of assets to the Children's Trust was a scheme to defraud her as a creditor under the MSA. *Ron*, 836 F. App'x at 197.

The court also noted that the MSA's release provision supported its holding because Suzanne and Avi had jointly released each other from "any and all claims" through the date of its execution, and some of Avi's alleged misconduct related to the Children's Trust predated the MSA. *See id.*

Thus, the underlying arbitration began with claims against Avi, both individually and as trustee of the Children's Trust. Avi, as trustee, counterclaimed for breach of contract and sought damages in the amount due to Stein. That is, Avi did not make a claim in arbitration to enforce an indemnity obligation. Instead, he made a claim for damages based on Suzanne's breach of the MSA's arbitration and release provisions, which recited the parties' agreement to "mutually dismiss[] with prejudice" "[a]ll lawsuits," to "jointly release each other from any and all claims through the MSA's date" of October 17, 2017, and to "submit any dispute related to the [MSA] to Alan Levin for binding arbitration."

Suzanne acknowledged as much in the arbitration proceeding, when she recognized in her motion practice that Avi was purporting to act not just on behalf of himself but also as trustee and that, as damages, he sought not just "'(1) the fees [he] personally expended compelling arbitration,' but also '(2) the fees the [Children's] Trust expended compelling arbitration, and (3) the fees the [Children's] Trust must reimburse to Gary Stein as trust protector for [the Federal Suit].'" When Suzanne sued Stein in the Federal Suit, the Children's Trust incurred obligations to

18

Stein equal to Stein's attorney's fees, leading to the arbitrator's finding that the Children's Trust "had, and continues to have, a contractual duty to indemnify Stein" for his fees incurred in the lawsuit." And the arbitrator awarded the damages Avi requested.

Suzanne cites several cases as limiting the arbitrator's discretion to award such damages. But in each case, the arbitration agreement expressly limited the arbitrator's authority as to certain remedies. *See, e.g.*, *Hebbronville Lone Star Rentals LLC v. Sunbelt Rentals Indus. Servs., LLC*, 898 F.3d 629, 632–33 (5th Cir. 2018) (vacating part of arbitration award reforming asset purchase agreement because agreement specified arbitrator could only calculate disputed revenue); *Townes Telecomms., Inc. v. Travis, Wolff & Co.*, 291 S.W.3d 490, 492–93 (Tex. App.—Dallas 2009, pet. denied) (vacating part of arbitration award splitting costs between parties because arbitration agreement required arbitrators to designate a non-prevailing party to bear all costs); *Lee v. Daniels & Daniels*, 264 S.W.3d 273, 283 (Tex. App.—San Antonio 2008, pet. denied) (vacating part of arbitration award that assessed 100% of the arbitrator's fees against one side because arbitration agreement specified that 50% of the arbitrator's fees would be paid by each side); *Robinson v. West*, No. 11-03-00028-CV, 2004 WL 178586, at *3 (Tex. App.— Eastland Jan. 30, 2004) (mem. op.) (vacating arbitration award when arbitrator exceeded authority by refusing to order dissolution of corporation even though

agreement called for arbitrator to handle dissolution), *rev'd on other grounds*, 180 S.W.3d 575 (Tex. 2005); *Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 639 (Tex. App.—Waco 2003, no pet.) (vacating part of arbitration award ordering costs for rock removal in a dispute over construction of a pool because such costs were not submitted under agreement seeking arbitrator's decision only as to whether customer should be compensated for new pool, reimbursement of amounts paid for pool construction, or pool repairs).[7] The MSA's arbitration provision contains no similar restrictive language. It states broadly that "the parties agree to submit any dispute related to [the MSA] to Alan Levin for binding arbitration," without specifying any particular remedy.

Absent restrictive language, an arbitrator has broad discretion to fashion an appropriate remedy. *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 446 S.W.3d 58, 82 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 518 S.W.3d 422 (Tex. 2017); *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 35 (Tex.

---

[7] In another case cited by Suzanne, this Court considered whether the arbitrator exceeded their authority as to claims that were not arbitrable. *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 44–45 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (vacating part of arbitration award that ruled on claim that was not included on exhibit listing "the only items" that were subject to arbitration agreement). Suzanne did not argue in the trial court or in her opening brief on appeal that there was no agreement to arbitrate Avi's claims in his capacity as trustee. *Cf. Black v. Shor*, 443 S.W.3d 170, 174 n.3 (Tex. App.—Corpus Christi 2013, no pet.) (new or additional issues raised in post-submission briefing are untimely and will not be considered by the court). Her complaints were of no agreement to arbitrate claims for damages to Stein.

App.—Houston [1st Dist.] 1995, no writ). A particular remedy lies beyond the arbitrator's authority "only if there is no rational way to explain the remedy . . . as a logical means of furthering the aims of the contract." *Forest Oil*, 446 S.W.3d at 82. Courts look only at the result. *Id.* "The single question is whether the award, however arrived at, is rationally inferable from the contract." *Id.* (quotation omitted).

The question of a rational relationship between the arbitration award and agreement must be answered affirmatively here. As Avi points out, when the parties executed the MSA, they contemplated that one or the other of them might breach its provisions, including the arbitration and release provisions; the arbitrator found Suzanne breached those provisions; and the arbitrator found that the Children's Trust suffered damages as a result. The arbitrator awarded the amount of Stein's fees as part of the Children's Trust's damages, and he created a mechanism whereby Avi could recover those damages as trustee once they were realized. Simply put, Stein's fees were not enforcement of an unasserted indemnity claim by Stein, but the measure of damages awarded by the arbitrator for Avi as trustee.

We do not decide whether the arbitrator correctly decided Avi's entitlement to damages as trustee or their ripeness or measure. *See id.* at 84. Even if the arbitrator made a mistake in applying the law of remedies or awarded a remedy a court of law could not, that does not support vacatur of the arbitration award on the ground that the arbitrator exceeded his authority, or modification or correction of the arbitration

21

award on the ground that the arbitrator ruled on a matter not submitted to him. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 171.088(a)(3)(A), .091(a)(2); *cf. Peacock*, 107 S.W.3d at 638–39 (arbitrator could award specific performance of contract obligations even though specific performance could not have been awarded by court of law). Accordingly, we hold the trial court did not err in confirming the arbitration award.

We further hold that the arbitration award does not require modification, as Suzanne suggests, to order Stein and the Children's Trust to release Suzanne from liability. As explained, Stein did not assert a claim against Suzanne, and she has not explained what claim he could assert given that the reimbursement obligation flows to Stein from the Children's Trust, not Suzanne. And the Children's Trust may only have one recovery—through the judgment confirming the arbitration award—for the claimed damages. *Cf. Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (a party may not have more than one recovery for the same injury).

We overrule Suzanne's sole issue.

**Conclusion**

We affirm the trial court's order.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.